Lipes *et al.* v. Hand *et al.*

No. 11,598.

## LIPES ET AL. v. HAND ET AL.

DRAINAGE.—*Improving Natural Stream.—Legislative Power.*—The Legislature has power to enact a statute, such as that of April 8th, 1881, providing that natural streams may be improved.

SAME.—*Repeal.*—The drainage act of April 8th, 1881, was not repealed by the act of April 21st, 1881.

SAME.—*Commissioners.—Irregular Appointment.—Bill of Exceptions.—Practice.*—Where the court approves the acts of drainage commissioners who are serving under its authority, it must appear by a proper bill of exceptions that timely objection, for any cause, was made to their action by the remonstrants; otherwise the rulings of the trial court will be respected.

SAME.—*Report.—Time of Filing.—Discretion of Court.*—The trial court has discretionary authority to extend the time of filing the report of the drainage commissioners.

SAME.—*Special Proceedings.—Trial by Jury.—Legislative Power.*—The Legislature has power to provide that in special proceedings the trial shall be by the court, and not by jury.

SAME.—*Trial Governed by Statute in Force at Time.*—The statute in force at the time of the trial governs as to the procedure.

SAME.—*Assessment of Benefits.—General and Special Benefits.*—In the assessment of benefits in drainage proceedings, the land-owner should not be charged with general benefits which accrue to him as a member of the community, but only with such as are special.

SAME.—*What are Special Benefits.*—Benefits are special when they increase the value of the land, relieve it from a burden, or make it especially adapted to a purpose which enhances its value.

SAME.—*Outlet.—Lateral Ditches.*—Where the construction of a large ditch, or the improving of a natural stream, enables land-owners to carry their lateral ditches into it, and to thus secure good drainage without encroaching upon the rights of others, there is a special benefit.

SAME.—*Act of April 8th, 1881, Constitutional.*—The drainage act of April 8th, 1881, providing for proceedings in the circuit court, is not unconstitutional as being in conflict with section 23 of the Bill of Rights because it denies the right of trial by jury, while the act of April 21st, 1881, relating to proceedings before the county commissioners, grants that right.

From the Allen Circuit Court.

*R. S. Robertson* and *J. B. Harper*, for appellants.

*T. E. Ellison*, for appellees.

ELLIOTT, J.—The appellees, proceeding under the act of April 8th, 1881, petitioned for the establishment of a ditch, and their petition was resisted by the appellants.

The point first made is that the circuit court had no jurisdiction of the subject-matter, and that its proceedings are void. One reason stated in support of this contention is that the petition seeks to deepen and straighten a river, and that the circuit court has no jurisdiction in such matters. The statute supplies a full answer to this contention, for it expressly provides that natural streams may be straightened, widened and deepened. R. S. 1881, section 4275. The Legislature has power to enact such a statute. Gould Waters, section 248.

Another reason urged in support of this position is that the act of April 8th, 1881, is repealed by the act of April 21st, 1881. This point has heretofore been decided against the appellants, and we have no doubt as to the soundness of those decisions; indeed, the language of the latter statute clearly shows that there was no repeal. *Shaw* v. *State, etc.*, 97 Ind. 23; *Crist* v. *State, ex rel.*, 97 Ind. 389; *Buchanan* v. *Rader*, 97 Ind. 605; *Meranda* v. *Spurlin*, 100 Ind. 380.

It is contended that the circuit court did not select drainage commissioners from six persons nominated by the township trustees, as required by section 4273, and that for this reason the proceedings are void. We do not think this question is presented by the record. The motion to strike out the report on the ground now urged was made at the November term, 1883. No time was then asked or allowed in which to file a bill of exceptions, and none was filed until February, 1885. This was too late to save the question; leave to file a bill should have been asked and obtained during the term. Where persons assume to act under the authority of the court, where there is an order appointing them, and where their acts are approved by the court, it must appear by a proper bill of exceptions that timely objection to their acting was made by the remonstrants; otherwise the rulings of the trial court will be respected.

It appears from the record that no harm resulted to the appellants from striking out some of their causes of remonstrance, and even if it were conceded that this ruling was erroneous, there could be no reversal, for harmless errors will not reverse a judgment.

The court had authority to extend the time of filing the report of the commissioners. It is a familiar rule that where a judicial tribunal has a general power to designate a time within which an act shall be done, it may extend the time. Such a power is regarded as a discretionary one, and the exercise of it by the court will not be interfered with unless there has been an abuse of discretion. If the power is limited to a certain time, then, of course, a different rule prevails.

The drainage laws have so often been declared constitutional that the question can no longer be deemed an open one.

It is contended that the court erred in refusing appellants a trial by jury. The power of the Legislature to provide that in special proceedings the trial shall be by the court, and not by jury, is fully established by the decisions upon the subject; there is, indeed, no contrariety of opinion. *Anderson* v. *Caldwell*, 91 Ind. 451 (46 Am. R. 613); *Indianapolis, etc., G. R. Co.* v. *Christian*, 93 Ind. 360; *Ross* v. *Davis*, 97 Ind. 79. We have no doubt as to the constitutional power of the Legislature to provide for the trial of drainage cases by the court.

In support of the contention of the right to a trial by jury appellants assert that the statute does not deny it upon all causes of remonstrance, and that, conceding the statute to be constitutional, they were nevertheless entitled to a jury. We can not assent to this doctrine. The statute expressly says that " Remonstrances founded on the second, third, fourth, fifth, sixth, seventh, eighth, or ninth causes of remonstrance shall be tried by the court without a jury," and of the other cause, the first, it says: " If the court be of the opinion that the first cause of the remonstrance above enumerated exists, it shall direct the commissioners to amend and perfect their

report; or the court may, in its discretion, set aside said report." Acts 1883, 177. This language plainly commits the question to the court, and when the first cause for remonstrance is considered, namely, "That the report of the commissioner is not according to law," it becomes still clearer that such a question was not intended to be tried by a jury.

The law is well settled that the statute in force at the time of the trial governs as to the procedure, and as the act of 1883 was in force when this case was tried, it governed as to the procedure on the trial.

The difficult question in the case is as to the rule which shall govern in the assessment of benefits. The language of the statute is very broad; it is this: "They (the commissioners) shall proceed and definitely determine the best and cheapest method of drainage, the termini and route, location and character of the proposed method, and fix the same by metes and bounds, courses and distances, and description, estimate the cost thereof, assess the benefits or injury, as the case may be, to each separate tract of land affected thereby, and to easements therein held by railway or other corporations." This language is very comprehensive and includes every appreciable benefit of a private character to the landowner, but, broad as it is, we do not think that it can be construed to extend to the general benefits which the landowner receives as one of the public. Counsel have not referred to any authorities upon this subject, and the only decisions we have been able to find in the course of our search are those made in cases where benefits and damages for the opening of highways were claimed. Judge Dillon, in discussing this general subject, says: "And here, most usually, arises the difficult inquiry, What benefits and what injuries are proper to be regarded as affecting the question of damages? Now, benefits and injuries are of two kinds: I. General or public, being such as are not peculiar to the particular proprietor, part of whose property is taken, but those benefits in which he shares and those injuries which he sus-

tains in common with the community or locality at large. II. Special or local, being those peculiar.to the particular land-owner, part of whose property is appropriated, and which are not common to the community or locality at large, such, on the one hand, as rendering his adjoining lands more useful and convenient to him, or otherwise giving them a peculiar increase in value, and, on the other, rendering them less useful or convenient, or otherwise, in a peculiar way, diminishing their value. The former class of benefits or injuries—namely, those which are general, and not special—have, according to the almost uniform course of decision, no place in the inquiry of damages, and can not be considered for the purpose of reducing the amount, being too indirect and contingent; but injuries which specially affect the proprietor, or benefits which are specially conferred upon his adjacent property, part of which is taken, are to be considered, unless, by the Constitution of the State or legislative enactment, all benefits, special as well as general, are to be excluded." 2 Dillon Mun. Corp. (3d ed.), section 624.

We think that the rule which prevails in analogous cases should be adopted in these drainage cases, and that the land-owner should not be assessed with general benefits which accrue to him as a member of the community.

As the land-owner is not to be charged with general benefits, but is to be assessed with all special benefits, it becomes necessary to inquire and determine what are special benefits. Whatever gives an additional value to the particular parcel of land is a special and not a general benefit, and it may be a special benefit, although not an immediate one. Suppose, for illustration, that the person assessed owns a tract of land situated on a knoll and well drained in every part, but that on all sides of it are great ponds rendering access difficult, and isolating it from highways, a drainage of the ponds would benefit the land-owner, although it might not carry any water at all immediately from his land, and such a benefit would be a special and not a general one. In estimating

damages, the general rule, as declared by a recent writer, is, that "in estimating value everything which gives the land intrinsic value is to be taken into consideration." 3 Sutherland Damages, 441. There can be no valid reason why the same general rule should not apply to benefits in drainage cases, for whatever gives intrinsic value to the land specially benefits it. The author just referred to, in speaking of benefits, says: "These benefits are estimated like damages." 3 Sutherland Damages, 452. The conclusion to which the authorities lead is, that benefits are special when they increase the value of the land, relieve it from a burden, or make it especially adapted to a purpose which enhances its value. 3 Sutherland Damages, 454 to 462; *Allen* v. *Charlestown,* 109 Mass. 243; *Whitney* v. *Boston,* 98 Mass. 312; *Farwell* v. *Cambridge,* 11 Gray, 413; *Milwaukee, etc., R. R. Co.* v. *Eble,* 4 Chand. (Wis.) 72.

Where the construction of a large ditch enables property owners to carry their lateral ditches into it, and to thus secure good drainage without encroaching upon the rights of others, there is a special benefit. This results from the rule that one land-owner has no right to collect water in a body and pour it upon the land of another. *City of Evansville* v. *Decker,* 84 Ind. 325 (43 Am. R. 46), *vide* opinion 328, 329; *Weis* v. *City of Madison,* 75 Ind. 241 (39 Am. R. 135), *vide* pp. 251, 248, 257; Gould Waters, sections 271, 272, 536. Where a land-owner obtains an outlet for lateral ditches constructed for the drainage of his land, by means of a large ditch, or by reason of the widening, deepening, and straightening of a natural stream, he receives a special benefit, for he is thus provided with means of drainage without injury to others. The evidence shows the appellants to have received this and other special benefits, and we can not disturb the finding of the trial court upon the evidence.

It may possibly be true that the appellants, under the existing condition of affairs, could lead their lateral ditches into the swamps and ponds without appreciable injury to their

owners, but as soon as these swamps and ponds are drained, as they will be by the contemplated improvement, the appellants would no longer have the right to lead their ditches to the land reclaimed, since this would be to collect water in artificial channels and pour it upon the lands of others to their injury, and this the appellants have no right to do. It results, therefore, that in securing outlets for their lateral ditches they do secure a special benefit.

In most cases the question whether there is or is not a special benefit is one of fact to be determined from the evidence in the particular case. This is so in the present instance, and under the settled rule we can not disturb the finding of the court upon the evidence.

Judgment affirmed.

Filed June 27, 1885.

## On Petition for a Rehearing.

ELLIOTT, J.—This case has been fully argued both orally and in elaborate briefs, but we are again asked to review the rulings of the trial court and our own.

It is now insisted that we did not decide one of the questions argued. We can not agree with counsel upon this point. We did decide, as many cases in our own and in other courts required us to do, that the drainage law was constitutional, and this necessarily included all phases of the question. We have, however, yielded to the earnest appeal of counsel, and now expressly discuss the phase of the question which they seem to think was left undecided.

The position assumed by counsel in their discussion of the case, as we understand their argument, is this: The statute of April 8th, 1881, denies a right to a trial by jury, while that of April 21st, 1881, confers that right, and the former statute is, therefore, in conflict with the provision of the Constitution which reads thus: " The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally

belong to all citizens." No authority is cited in support of this position, and, although we have carefully searched the books, we can find none that lends it the slightest support.

*The act of April 8th, 1881, provides for proceedings in the circuit court; while that of April 21st, 1881, provides for proceedings before the board of commissioners. There are, therefore, two distinct courts and two distinct proceedings designated and provided for in the two statutes. Parties in the same court have the same rights, but there is a difference in the procedure of the two courts. The privileges are granted upon the same terms, that is, the rules prescribed for the one court apply to all parties who come into that court. It has always been the legislative practice in this State to prescribe different methods of procedure for different courts. No one has ever supposed that because one method of procedure is provided for the circuit court, and another for the board of commissioners, the Constitution has been violated. We have always had different rules of procedure for the circuit court and for the courts of the justices of the peace, and no one has ever thought of questioning the validity of the statutes prescribing the modes of procedure for those courts. It is perfectly clear that prescribing different methods of procedure for different tribunals is not denying to one class of citizens rights conferred upon another class. Citizens litigating in different courts are not upon the same terms, for they are in different tribunals governed by different systems of procedure.

There is no discrimination between different classes of citizens, nor, indeed, is there anything bearing the faintest resemblance to a discrimination. There is a discrimination as to methods of procedure in different tribunals, but none between citizens. Privileges and immunities are not granted to one class and denied to another. The distinction is between judicial tribunals, not between citizens. If we hold the act of April 21st, 1881, unconstitutional, then we must hold that there can be one judicial tribunal only for the trial

of all cases, and that there must be one procedure in all courts,, and this would carry us into conflict with decisions that have stood unchallenged for many years. The statutes in reference to arbitrators, to commissioners for the assessment of damages, to the courts of the justices of the peace and of the county commissioners, must all go down, if the appellants' position is maintainable. That it is not maintainable we have no doubt.

If we did entertain doubt as to the constitutionality of the statute, we should still be bound to sustain it, for it has been decided time and again that a statute will be upheld unless its unconstitutionality is so plain that no doubt can be entertained.

We have many cases in our own reports, and there are many in the reports of other States, holding that different rules of pleading and of practice may be prescribed for different courts. There are, indeed, scores of cases holding that different rules may be prescribed for the trial of different classes of cases in the same court; as, for instance, chancery and common law cases, probate cases and ordinary civil actions. These statutes do not, it is quite clear, confer upon one class of citizens privileges and immunities that are denied to other classes; they do no more than prescribe different methods of procedure for different tribunals and different classes of actions. For this plain reason no one, until this late day, has ever thought of assailing their validity.

We do not care to add to what was said in the former opinion upon the question of the assessment of benefits, further than to examine some authorities to which our attention has been called by the counsel for the appellees, and to set down a thought or two which they suggest. These authorities carry the doctrine farther than we deemed it necessary to do. Judge Cooley maintains that " the only safe and practicable course, and the one which will do equal justice to all parties, is to consider what will be the influence of the proposed improve-

ment on the market value of the property." Cooley Taxation, 459. In the *Matter of Furman Street,* 17 Wend. 650, the same general doctrine is maintained in a very able opinion by BRONSON, J., and this doctrine is adopted in *State, etc.,* v. *Mayor, etc.,* 35 N. J. L. 157, 167.

It is apparent, therefore, that there may be a benefit to a tract of land although its drainage facilities may not be increased, but we need not elaborate this point, for we gave it consideration in our former opinion. The statute does not, as appellants unwarrantably assume, confine the assessment to the single particular of an increase in the drainage facilities, for the statute does not restrict the assessment of benefits or of damages to any one kind of benefit or injury. It is clear that land might be injured by a ditch, and yet its drainage facilities be not impaired; on the other hand, as was shown in our former opinion, land might be materially benefited although its drainage facilities may not be directly increased. But, in this instance, there was evidence tending to show that the proposed improvement would benefit the lands of all the appellants by affording better drainage.

Petition overruled.

Filed Jan. 7, 1886.