[Sac. No. 479.   Department Two.—November 26, 1898.]
## RECLAMATION DISTRICT No. 537, OF YOLO COUNTY, Respondent, v. A. H. BURGER et al., Appellants.

RECLAMATION DISTRICT—ORGANIZATION—JURISDICTION OF SUPERVISORS.— The board of supervisors cannot acquire jurisdiction to organize a new reclamation district unless a petition therefor, purporting to bear the requisite number of signatures of the owners of one-half of the acreage of the district as organized, is presented to the board, in which case the board is authorized to determine and adjudicate questions of fact arising upon such petition.

ID.— PROCEEDING IN INVITUM— ENFORCEMENT OF ASSESSMENT—ATTACK UPON CORPORATION.—The organization of a reclamation district results in putting a burden on property against the will of the owners, and the requirements of the law as to such a proceeding cannot be evaded by calling it a corporation; and in an action to enforce an assessment levied by the district, if its organization is denied, the question is not whether the district has so acted as to become a corporation *de facto*, but whether there has been in fact a substantial compliance with the law, and the exercise of jurisdiction by the board of supervisors to determine facts presented before it by a petition sufficient in form and purporting to be sufficiently signed.

ID.—SIGNATURE BY ADMINISTRATRIX—ADJUDICATION BY SUPERVISORS.— Though the administratrix of an estate is not competent as such to sign a petition for the organization of a reclamation district, yet if the petition was otherwise sufficient, and did not show that one of the signers was an administratrix of any estate, but merely showed that the word "administratrix" was appended to her signature, the question of her ownership was one of fact, upon which the determination of the board was conclusive; and no proof to the contrary is competent.

ID.—ASSESSMENT— PROPORTION TO BENEFITS—EVIDENCE—OPINIONS.—In an action by a reclamation district to enforce an assessment, it is not competent to ask witnesses for their opinions, upon the precise issue being tried by the court, as to whether the assessment as made constituted a charge upon each tract in proportion to benefits; but if such questions were allowed, the opposing party, upon cross-examination, would be entitled to ask upon what the opinion was based.

ID.—IMPROPER ASSESSMENT—OLD LEVEE.—An assessment by a reclamation district to pay for an old levee used as part of the plan of reclamation, so as to credit each owner with the estimated value of that part of the levee which was upon his land, at twelve and one-half cents per cubic yard, it appearing that a break in the levee at any point would flood the whole district, and that work on any part of the levee was of as much benefit

to any other landowner as to him upon whose land the work was done, and that no two tracts were assessed alike, or in proportion to the altitude of the land, is not in proportion to benefits, and cannot be sustained.

APPEAL from an order of the Superior Court of Yolo County denying a new trial. W. H. Grant, Judge.

The facts are stated in the opinion of the court.

F. E. Baker, and E. A. Bridgford, for Appellant.

Holl & Dunn, and Chauncey H. Dunn, for Respondent.

TEMPLE, J.—This suit is by a reclamation district to collect an assessment. The appeal is from a refusal of a new trial. It is denied that the district was duly organized, and that the assessment was in proportion to benefits.

The alleged defect in organization is that the petition was not signed by the owners of one-half of the acreage of the district. After the petition had been presented and had been published, the board organized the district, excluding therefrom about three hundred acres, which was included in the district as described in the petition. It is admitted that the petition does contain the signatures of the owners of one-half of the land in the district, as reformed. It is contended that the board of supervisors cannot thus give themselves jurisdiction by forming a new district in which a majority of acreage would be represented on the petition. This position is certainly sound. A petition with the requisite number of signatures must be presented before the board can act in the matter at all.

The proceeding results in putting a burden upon property against the will of the owners, and the requirements as to proceedings of that character cannot be evaded by calling the governmental agency through which the proceeding is conducted a corporation. As remarked in *People v. Reclamation Dist.* 551, 117 Cal. 114, the proceeding greatly resembles those in which property is assessed for local improvements in proportion to benefits, and I see no reason why the same rules as to essential requirements should not apply. The board of supervisors is required to inquire and determine whether the petition is sufficiently signed. So far as this depends upon a fact to be deter-

mined, their conclusion may be final as an adjudication, but the question is not whether the district has so acted as to constitute a corporation *de facto.* (*Lower Kings River etc. Dist. v. Phillips,* 108 Cal. 306.) If, upon due notice and a petition sufficient in form, the parties have been afforded an opportunity to be heard before a competent tribunal, they have had due process according to the law of the land, and are concluded. They cannot be deprived of their property without such hearing, or opportunity to be heard, by proof of the existence of a corporation *de facto.* There must have been, in fact, a substantial compliance with the law.

Plaintiff does not concede that the petition as presented was defective, or that it did not have the required number of signers. The number of acres represented by each signer is stated in the petition, and one of the petitioners signs as administratrix. Deducting the amount represented by this signer, there would not be enough land represented to give the board jurisdiction. It is conceded that an administrator would not be a competent petitioner under the law, but the petition does not show that the person so signing was administratrix of any estate. The petition only shows that the word was affixed to her signature. This is ambiguous, and no proof of the real fact was offered at the trial, and if offered would not have been competent. The question was, after all, one of fact, upon which the determination of the board has been held conclusive.

It was not competent to ask witnesses for their opinions upon the precise issue being tried before the court, as to whether the assessment, as made, constituted a charge upon each tract in proportion to benefits. But if such questions were allowable, there can be no doubt as to the right of the opposing party, on cross-examination, to ask upon what the opinion was based. These rulings, though erroneous, are not of supreme importance.

The important question in the case has reference to the method adopted in making the assessment. It is contended that by it the district was assessed to pay for an old levee which was used as a part of the plan of reclamation, and that in the nature of things it could not result in a charge upon each tract in proportion to benefits. The district fronts upon the Sacramento

river, along which is an old levee, which is used as a county road. The district is about three-eighths of a mile wide, and slopes back from the river, so that the rear portion is some seven or eight feet lower than the front. Protected by the old levee, the higher land along the river can ordinarily be cultivated. Each tract fronts on the river, and most of them extend also to the rear boundary. The method pursued by the commissioners is set out in finding III, which reads as follows:

"That all the allegations of the third paragraph or subdivision of the complaint are true, but in relation to the allegation therein set forth. 'that the commissioners assessed against each tract of land in said district a charge proportionate to the whole expense, and to the benefits which would result to each tract from the work of reclamation,' the court further finds that at the time the engineer appointed by the board of trustees of said district planned, located, and reported the works necessary to effect a reclamation of the lands in said district, there was a levee along the river in front of the lands in said district. The commissioners, in making their view, considered the old levee in place as a part of the work necessary to reclaim all the lands in the district, and estimated its value at $31,718.60, which, with the cost of the new work estimated at $55,000, aggregated the total sum of $86,718.60, the cost of the work necessary for the reclamation of all the land in said district, if there had been no front levee. To ascertain the charge which should be assessed against the land of each landowner, the whole number of acres within the line of the proposed levees within the district was divided into $86,718.60 to find the rate per acre, by which rate the number of acres belonging to each landowner within the lines of the proposed levees was multiplied. And the result in each case was assumed by the commissioners as the amount he ought to pay if no front levees were in place, and if it was necessary to raise the entire sum of $86,718.60. From the result so obtained, in each case, was deducted the value of the old levee in place in front of each owner's land, and the balance was assessed by said commissioners against his tract of land as the proper proportion which he should pay of $55,000, cost of new work and incidental expenses, and the commissioners did not segregate the respective tracts of land into high land, middle class land, and

low land, and assess different amounts upon each class, but assessed each tract described in the petition as a whole."

Apparently by this method the district was assessed and was made to pay for the value of the old levee, and each landowner was credited with the estimated value of that portion which was on his land. Of course, the result was that those who had the most levee received the greater credit, and those who had least had to pay most. That is, those who did not have an average share of the old levee were forced to pay that much more of the cost of reclamation, while those who had the levee paid just that much less toward the cost of reclamation.

A weak attempt is made to show that this was a proper method of determining the relative benefits which the different tracts would receive from the proposed reclamation. There is certainly no natural relation between the number of cubic yards of old levee found on a tract and the amount of benefit that land would receive from the reclamation. A break in the levee at any point would flood the whole district, and work on any part of the levee was of as much benefit to any other landowner as to him upon whose land the work was done. To levy and collect an assessment upon the district for the value of the old levee was to make the district pay for it; to credit the landowners with the value of the portion of the levee on their land at twelve and one-half cents per cubic yard—as was done—was to pay such landowners for it.

But it is said that the result was to give each tract the precise advantage it would be entitled to from the fact that the high lands along the river received less benefit from the reclamation than the back lands. The commissioners did not determine, nor did the engineer of the district, what were socalled high lands or low lands. The phrase "high land" is applied to the narrow strip along the river, which can sometimes be cultivated, and it is found that the amount on each tract is in proportion to its frontage. A glance at the map furnished, which accords with the calculations in the record, will show that this proposition will not hold as to any two tracts in the district. Tracts 6, 7, 8, and 9 run across the district from the river to the back lines, and are bounded by parallel and rectangular lines. Under the finding they must contain precisely the same proportionate

amount of high and low lands.   No two are assessed alike, and
between the contiguous tracts 7 and 8 there is a difference
in the assessment of over $8 per acre.   The average was $18.11.
Tract 5, as compared with tract 11, has at least three times as
much high land (under the finding), in proportion to its area,
as tract 11 has.   It is assessed at $13.08 and tract 11 at $8.52 per
acre.   This condition of things would be reversed if respond-
ent's contention were good.   Under the method pursued, tract 1
was entitled to an allowance.   That is, its levee, which the dis-
trict bought, more than paid for its share of the cost of reclama-
tion.   The commissioners thought they were not authorized to
make an allowance and must assess all the land.   So they
charged tract 1 and tract 2 five cents per acre each.   But all
this, and as much more, would hardly make the fact more ob-
vious than it is from a mere reading of the finding.

Appellant's assessment is a specimen of all.   Condensed it is
as follows: Land benefited, 151.57 acres.   Total assessment
which would have been necessary had there been no front levee,
$4,819.93.   Credit allowed for front levee at twelve and one-
half cents per cubic yard, $1,147.   Net assessment, $3,672.03.

What a wonderful coincidence it would have been if there
could have been found any relation between the value of the old
levee, calculated at twelve and one-half cents per cubic yard, and
the relative amount of benefits received by that tract by the pro-
posed reclamation!

It may be that the owners of this old levee, if it was used in
the reclamation, had some equity to be compensated for it.   No
such question is before us.   If it was needed, and was a proper
thing to be paid for, the trustees of the district could buy it,
and its cost would constitute a portion of the expense of recla-
mation, and should have been included in the estimate of the
cost of reclamation, but the commissioners have no concern with
such a matter as that.   Their function is simply and only, as
assessors, to distribute the amount of the estimate for which the
assessment was ordered upon the different tracts of land in pro-
portion to the benefits which will result from the work.   They
are to take things as they are, and not as they were at some
former period.   When they assume to act as a legislature or a
court of equity, they usurp functions which do not belong to
them.

The judgment is reversed and a new trial ordered.

McFarland, J., and Garoutte, J., concurred.

Hearing in Bank denied.