THE CHICAGO UNION TRACTION COMPANY

*v.*

THE CITY OF CHICAGO.

*Opinion filed October 26, 1903.*

204    363
207    552
f207   610
204    363
215   ²415

1. SPECIAL ASSESSMENTS—*benefits cannot be apportioned between a leasehold and remainder.* A judgment confirming a special assessment is *in rem* against the land itself, and the benefits assessed can not be apportioned against the leasehold and the remainder in fee as separate estates and separate judgments be entered as to each.

2. SAME—*measure of benefits to city lots held by a street railroad company.* The measure of benefits from a local improvement to city lots owned by a street railroad company is the enhanced value of the property by reason of the construction of the improvement, notwithstanding the use is restricted to railroad purposes. (*Illinois Central Railroad Co.* v. *Chicago*, 141 Ill. 509, distinguished.)

APPEAL from the County Court of Cook county; the Hon. L. C. RUTH, Judge, presiding.

WILLISTON FISH, and LOUIS BOISOT, (JOHN A. ROSE, of counsel,) for appellant.

ROBERT REDFIELD, (CHARLES M. WALKER, and EDGAR B. TOLMAN, of counsel,) for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The city council of the city of Chicago, on the recommendation of the board of local improvements, adopted an ordinance providing that the alley from the north line of West Washington street to the south curb line of West Randolph street, between South Jefferson street and South Desplaines street, (except the space occupied by certain iron vault-covers,) should be graded and paved with granite blocks laid on artificial concrete, and that the cost of the improvement should be defrayed by special assessments on the property benefited. A petition was filed by the city in the county court of Cook county for a judgment confirming the assessment of benefits made by the commissioners. The north fifty feet of lot 7, in block 47, in the original town (now city) of Chicago, was assessed by the commissioners for benefits in the sum of $216, and the south twenty-five and two-thirds feet of the same lot were likewise assessed in the sum of $110.85, and lot No. 9 of the same block was assessed for like benefits in the sum of $326.85.  The appellant company appeared in the said county court and filed a number of objections to the confirmation of these assessments, all of which were overruled.  Objection No. 22 was as follows: "The said assessment upon the property of said objector exceeds the benefits which will accrue to said property from the proposed improvement." This appeal presents but a single question: whether the court erred in overruling said objection No. 22.

On the hearing of this objection a jury was waived and the issue was submitted to the court for decision. It was stipulated that the 'lots objected for, in the year 1888 became the property in fee of the West Chicago Street Railroad Company; that said company was a corporation incorporated under the laws of the State of Illinois on July 19, 1887, for the term of ninety-nine years, with power to acquire, construct, maintain and operate one or more street railroads or horse and dummy railroads in the county of Cook; that said West Chicago Street Railroad Company, on the first day of June, 1899, leased the said lots to the appellant company, to be used "for street railway purposes only," for the term of ninety-nine years, and thereafter during any renewal or extension of the West Chicago Street Railroad Company's charter; that the appellant company is also a corporation organized under the laws of the State of Illinois on May 24, 1899, with power to own, lease, construct and operate street railways in the said county of Cook and other specified counties, and to own and enjoy all real property necessary and proper for the prosecution of the business of operating street railways.

A three-story brick building stood on the north fifty feet of lot No. 7. The east fifty feet of this building had been sub-leased by the appellant company to C. P. Rice for the term of five years. He was engaged in conducting a transfer stable, and used that portion of the building for that purpose. The appellant company had sub-leased the west one hundred feet of the same building to one B. A. Railton for the term of five years. He was a wholesale grocer, and occupied that portion of the building in his business. The south twenty-five and two-thirds feet of the same lot is occupied by a brick building. It was formerly used by the appellant company as a power house, but about a year before the trial the engines and boilers had been removed and the building was unused, save that the remainder of the machinery of the power

house still remained in place therein. On lot No. 9 there was a building which the company used as a power house.

Two witnesses testified in behalf of the appellant as to the benefit of the improvement to the lots. They confined their estimates of benefits to the use then made of the properties. The testimony of Conroy, a witness in behalf of the city, was to the effect that on that basis of use the benefits to the lots would equal the assessment against the property, but the testimony of the two witnesses for the appellant company was, that as to the south twenty-five and two-thirds feet of lot 7 there would be no benefit, and that the benefits to the remaining part of lot 7 and to lot 9 would be less in amount than the assessment. On cross-examination, in answer to a question whether he meant to say lot No. 9 would be benefited to the extent of $375 if used only for a power house, Conroy answered that it would, and volunteered also to say that the grading and paving of the alley would add from $500 to $1000 to the salable value of lot No. 9. The court overruled the motion of the appellant company to strike from the record the remark of the witness as to the increase in the salable value of the lot by reason of the improvement.

The court also refused to hold as correct the following propositions of law:

"The court holds, as matter of law, that the true measure of benefits conferred by the proposed improvement upon any lot or parcel of land objected for herein by the Chicago Union Traction Company, which is restricted by law to use for street railway uses and purposes only, cannot exceed the increase in the value of said lot or parcel of land for the special uses to which it is so by law restricted.

"The court holds, as matter of law, that the true measure of benefits flowing from the proposed improvement to each lot of the property objected for herein by the Chicago Union Traction Company, and used as location

for said company's power plant, cannot exceed the increase in value of such lot for use as a location for said power plant.

"The court holds, as a propositon of law, that as to any lot or parcel of land objected for herein by the Chicago Union Traction Company which the evidence shows is so owned or held by said company, that it is restricted by law to use for street railway uses and purposes only, and which the evidence shows has been for many years last past used solely and necessarily as a location of a power plant to furnish power for said company's street railway, is now so used, and, as far as can now be foreseen, will continue to be so used indefinitely in the future, the true measure of benefits from the improvement herein proposed cannot exceed the increase in the value of said lot or parcel of land for such use as the location of such power house."

It is urged by counsel for the appellant company that the true measure of benefits for all of the lots is the benefit which the improvement would confer upon the property for special use for railway purposes, and that it is apparent from the rulings of the court on the motion to strike out a portion of the testimony of the witness Conroy and in refusing to hold the said propositions of law to be correct, that the court entertained the erroneous view that benefits to the lots might be determined from the consideration of the effect of the improvement to enhance the salable value of the lots or their value for general purposes, and that, under the influence of such view of the law applicable to the case, it erred in weighing and applying the testimony heard in the case and in arriving at the judgment entered herein.

We have frequently declared it to be the general rule, the inquiry as to benefits is to what extent the market value of the premises will be enhanced by the improvement. The right of way of a railroad is a mere easement, not susceptible of being placed upon the market and

sold for general business purposes. The properties here involved are ordinary city lots, platted for the express purpose of being used for business purposes. The title in fee to the lots is in one owner and the leasehold estate of ninety-nine years is in another. The leasehold estate is for a restricted use and is enjoyable only for a limited time, and the benefits of the improvement to that estate may not, for that reason, be properly measured by the enhancement in value of the property by reason of the improvement. But the judgment is *in rem*, (*Gibler* v. *City of Mattoon,* 167 Ill. 18,) that is, against the property itself as an entirety and in a gross sum for all the benefits which will accrue both to the fee in remainder and the leasehold estate. The benefits cannot be apportioned against the estate in fee in remainder and against the leasehold estate. The adjustment of benefits in respect of these different interests in the lots cannot be made in this proceeding and a separate judgment entered against each estate, but the total benefits are to be ascertained and judgment confirmed therefor against the lots, respectively, in the same manner as State and county taxes are levied and assessed against them. It is usual in leases for such long periods as that by which appellant holds possession of these lots, to provide, by stipulations incorporated in the lease, as to the liability of the lessor or lessee to make payment of general taxes, special assessments, etc. But with that the courts have no concern in proceedings for the collection of the general taxes, or for the confirmation of special assessments against property for benefits conferred thereon by local improvements constructed by public authorities acting in their legislative capacities. The court therefore properly declined to hold that the measure of the benefits conferred upon the lots in question could not exceed the increase in the value of the lots for the special uses to be made thereof by the appellant company under the terms of the lease by which it held the property.

A careful examination of the opinion in *Illinois Central Railroad Co.* v. *City of Chicago*, 141 Ill. 509, will remove the impression of counsel that a different doctrine was there announced.   That was a proceeding for the confirmation of a special assessment against a portion of the right of way of the Illinois Central Railroad Company, and we held that though, as a general rule, benefits arising from a local improvement should be determined by the increase in the market value of the property for any use to which it could be properly devoted, under the peculiar circumstances of the case the true measure of benefits was the increased value of the land for its special use as a right of way.   The reason for this exception to the general rule as to the measure of benefits is clearly to be gathered in the opinion.   It is, that the right of way so proposed to be assessed for benefits was comprised in a certain grant of lands to the State of Illinois from the general government by the first section of the act of Congress of September 20, 1850, (9 U. S. Stat. at Large, p. 466,) which granted lands to the State of Illinois to aid in the construction of the Illinois Central railroad, and gave to the State the right of way, of the width of two hundred feet, through the public lands for the construction of a railroad, and an act of the General Assembly of the State of Illinois incorporating the Illinois Central railroad, section 15 whereof granted a right of way to the said Illinois Central Railroad Company over and through the lands so granted to the State, "for the only and sole purpose of surveying, locating, constructing, completing, altering, maintaining and operating said road and branches as in this act provided." And we there said (p. 514): "It is thus plain that under the act of Congress donating the lands for the constructing of a railroad, and the charter of the railroad company, the strip of land—the right of way—is devoted to a certain specified purpose, and it cannot be diverted from that purpose.   The Illinois Central Railroad Company owes duties and obligations to

204—24

the State from whom it accepted its charter. It is bound to maintain and operate its road and perform the different obligations for which it was created. This two hundred foot strip of land the railroad holds and enjoys as its right of way and road-bed, donated to it for that purpose. Under its charter it is clothed with power to use this strip for railroad purposes, but for no other purpose. * * * Here is a particular, specified use fixed by law, which it is beyond the power of the owner to change. * * * In a proceeding by special assessment in no case can the assessment exceed the benefit which will be conferred on the property by the construction of the improvement. The benefit must be a real, actual benefit, —not one resting in conjecture; and while it was proper to consider in this case all benefits conferred upon the defendant's right of way, for all railroad purposes, by the construction of the improvement, it is manifest that it would be unjust to charge upon the land benefits which might, in the opinions of witnesses, be conferred on the land should it be devoted to other purposes, when the railroad company is prohibited by law from using the land for any but railroad purposes."

The land comprised in the portion of the right of way of the Illinois Central railroad in that case proposed to be assessed for benefits had been set apart, through the operation of the enactments of the general government and the State of Illinois, to the restricted and limited purpose or use of a right of way. It could not be lawfully used for any other purpose, and could not be benefited by any improvement except to the extent its value for that particular purpose should be enhanced by the improvement. The lots here involved have not been withdrawn by law from any of the uses to which such property may be devoted. The owner of the fee in the lots, as lessor, and the appellant company, as lessee, have stipulated in the lease evidencing a private transaction between them, that the appellant company should have

the right of occupancy and restricted and limited use of the property for the period of the lease, but they could not thereby withdraw the lots from the operation of the general statutes of the State, and the ordinances of the city in pursuance thereof, requiring that the property should, with other property, bear its just proportion of the burdens of constructing local improvements. The evidence showed these lots to be benefited by the grading and paving of the alley, and the court correctly confirmed an assessment for such benefits, and was not required to ascertain and determine what proportion of such benefit would be enjoyed by the appellant and what proportion by the owner of the fee.

The holdings in *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago*, 149 Ill. 457, *Illinois Central Railroad Co.* v. *Village of Lostant*, 167 id. 85, *Chicago and Northwestern Railway Co.* v. *Town of Cicero*, 157 id. 48, and *Illinois Central Railroad Co.* v. *City of Chicago*, 169 id. 329, cited by counsel for the appellant company as supporting the contention that the measure of benefits arising from a local improvement to property held for railroad purposes and uses only is the benefit to the property for such purposes, announce no such doctrine. Those cases were proceedings to condemn the rights of way of railroad companies for other public uses, and the principle declared was, that the measure of damages or just compensation to be awarded a railroad company when its right of way is to be condemned for other public uses, is not the market value of the right of way taken, but is the decrease in the value of the use of the land for railroad purposes. In condemnation cases the railroad whose right of way is taken is entitled to just compensation. As such companies, in their right of way holdings, have but an easement in the land, just compensation for the condemnation thereof for another public use is properly restricted to the injury to the easement. But the inquiry here is as to the benefit to accrue to ordinary city lots owned in fee and held by

the appellant company under a lease,—not a mere ease-
ment in the nature of a right of way, which may not, un-
der any circumstances, be sold or appropriated to any
other use than that of a right of way. The general rule,
therefore, became applicable, that the measure of bene-
fits was the enhanced value of the property by reason
of the construction of the improvement. It is true, the
fee is vested in the West Chicago Street Railroad Com-
pany, a corporation organized under the laws of the State
of Illinois and not possessed of full and unrestricted
power to acquire and hold real estate. It had lawful
power to acquire and hold such real estate as may be
necessary for the transaction of its business, or it may
lawfully acquire the title to real estate by legal proceed-
ings for the collection of debts due to it; but we are un-
able to see that the fact that it is so restricted in point
of power to acquire, hold and possess real estate can in
any way operate to change the rule as to the measure of
benefits accruing to these lots by reason of the construc-
tion of a local improvement. In the absence of proof on
the point we are to assume it obtained the fee title to
the lots lawfully. It owns the fee in remainder, and may
lawfully sell and dispose of the remainder to be used for
general purposes, and thus receive the benefit of the im-
provements in the enhanced value of the property. If
it is holding the fee title to these lots in violation of the
laws and policy of the State, it may nevertheless sell
and dispose of the title in fee in remainder. There is no
provision of law for the forfeiture of real estate so held
without lawful authority. It may lawfully alien its es-
tate or interest in the lots, or the alienation thereof may
be enforced on the application of the Attorney General
or State's attorney, acting under the authority of the
provisions of section 5 of chapter 32, entitled "Corpora-
tions," (Hurd's Stat. 1899, p. 435,) for an order of the court,
pursuant to the further provisions of said section 5, di-
recting sale thereof to be made. The proceeds of such

enforced sale, less the costs and fees of the proceeding, shall, so the statute provides, be paid over to the corporation. If a local improvement adds to the salable value of the property so held by a corporation, it would at private sale or at such enforced sale produce a correspondingly better price, and the benefit of such enhancement of the price would accrue to the corporation. Hence, if the paving and grading of the alley will increase the market value of the lots the estate therein will be benefited correspondingly, and such increase in value is the proper measure of the benefit of the improvement to the property, the judgment being *in rem* and against every interest and estate in the lots.

The judgment is affirmed.          *Judgment affirmed.*