[Civ. No. 1172.   Third Appellate District.—December 27, 1913, May 23, 1914.]

## RIVERDALE RECLAMATION DISTRICT NO. 805, Respondent, v. W. F. SHIMMIN et al., Appellants.

RECLAMATION DISTRICT—ACTION TO DETERMINE LEGALITY OF ASSESSMENT—OVERRATING OF BENEFITS.—In an action under section 3493½ of the Political Code to determine the validity of an assessment levied by a reclamation district for the construction of a levee, the landowner may show in defense that there has been a material overrating of benefits and consequent injuries to the taxpayers, whether such overrating is the result of fraud or negligence on the part of the commissioners.

ID.—QUESTION OF BENEFITS—DISCRETION OF COMMISSIONERS IN DETERMINING.—But in the application of this rule, the statute contemplates that considerable discretion shall be exercised by the commissioners in the determination of the question as to benefits which will accrue to the several tracts of land included in the district; and that while an arbitrary assessment cannot be levied, the judgment of the commissioners upon the assessment, after a view of the lands contemplated by the statute, must be presumed to have been the result of a consideration of all the elements necessary to a just apportionment of the assessment.

ID.—PRESUMPTION RAISED BY SECTION 3463 OF POLITICAL CODE—WHEN INAPPLICABLE.—The presumption raised by section 3463 of the Political Code to the effect that the assessment-list of the commissioners or a certified copy thereof is prima facie evidence of the matters therein contained, and that such assessment was levied in proportion to benefits to be derived from the works of reclamation, may under some circumstances be sufficient to support a finding of the propriety and equality of the assessment, but where the commissioners themselves testify directly and fully as to the method

pursued by them in apportioning the charges upon the land, there is no room for the play of the presumption, and their testimony should be looked to as a guide to what they did.

ID.—ASSESSMENT FOR LEVEE—ARBITRARY SCALE—VALUES AND BENEFITS. If the commissioners of a reclamation district, in levying an assessment to construct a levee, arbitrarily proceed on the theory that no assessment should be less than one nor more than ten dollars, and do not take into account the value of the land at the time of the assessment and its probable enhancement from the construction of the improvement, and the evidence shows a wide departure in the result reached from the proportionate increase in the respective values of the various tracts of land, a court is warranted in setting aside the assessment.

ID.— MATTERS FOR CONSIDERATION IN LEVYING ASSESSMENT — PRIOR LEVEES—CONDITION OF LAND.—In levying such assessment the commissioners should take into consideration the levees that have previously been constructed and their relation to the protection of the land from overflow, and they should also take into consideration existing conditions of the land as they are at the time of the assessment.

ID.—VALUE OF LAND—CONSIDERATION OF INCREASE FROM IMPROVEMENT. The commissioners should take into consideration the value of the land at the time of the assessment as contrasted with its value after the completion of the improvement; and the value is either the intrinsic or the market value, but there is no way of determining the intrinsic except by applying the test of the market value.

ID.—DIFFERENCE IN VALUE OF LAND BEFORE AND AFTER IMPROVEMENT AS MEASURE OF BENEFITS.—One method of ascertaining the proportionate benefits to the land from the levee, is to determine the value of the land before and after the improvement, the difference being the measure of the benefit; but this is not necessarily the only method.

ID.—PAYMENT BY PART OF LANDOWNERS—WHETHER BARS SETTING ASIDE OF ASSESSMENT.—The fact that an assessment levied by a reclamation district has been paid by many of the landowners without complaint, and by a few over objection, will not deter a court from setting aside the assessment, if its inequalities are palpable and important and it would be a gross injustice to some of the landowners to enforce the charges as made by the commissioners.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial.   H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Cartwright & Cashin, for Appellants.

M. K. Harris, Sutherland & Barbour, Devlin & Devlin, and George & Hinsdale for Respondent.

BURNETT, J.—The action was brought by respondent, under section 3493½ of the Political Code, to determine the validity of an assessment levied on the lands of appellants and others situated within said reclamation district. The amount involved was sixteen thousand five hundred dollars, and it was to be expended principally for the purpose of erecting a levee along the north line of the district, this line being the south bank of a certain watercourse known as Murphy Slough. It is stated by appellants that "the regularity of the organization of plaintiff is not involved in the action and the matters at issue were the legality of the method adopted by the commissioners of assessment in apportioning the amount of the assessment on the different parcels of land in the district."

The assessment is questioned on various grounds, one of which is that "the commissioners of assessment, in estimating the benefits which the various pieces of land in the district will derive from the proposed works of reclamation, failed to take into consideration the greater proportionate increase in market value of lands adjoining Murphy Slough which will by the construction of the new levee and for the first time be reclaimed from overflow and the less proportionate increase in market value of lands in other portions of the district already reclaimed and protected from overflow at the time of the formation of the district."

There is no doubt of the rule that, in an action like this to test the legality of the assessment, the landowner may show in defense that "there has been a material overrating of benefits and consequent injuries to the taxpayers whether such overrating be the result of fraud or negligence of the commissioners." (*Hagar* v. *Reclamation District*, 111 U. S. 701, [28 L. Ed. 569, 4 Sup. Ct. Rep. 663]; *Reclamation District* v. *Phillips*, 108 Cal. 310; [39 Pac. 630, 41 Pac. 335]; *Reclamation District* v. *Sels*, 117 Cal. 164, [49 Pac. 131].)

In applying the rule, however, we must observe the principle contended for by respondent and stated in *Reclamation*

*District No. 7* v. *Sherman,* 11 Cal. App. 399, [105 Pac. 277], as follows: "It is clear that the statute contemplates that considerable discretion shall be exercised by the commissioners in the determination of the question as to benefits which will accrue to the several tracts of land included in the district, that while an arbitrary assessment cannot be levied, the judgment of the commissioners upon the assessment, after a view of the lands contemplated by the statute, must be presumed to have been the result of a consideration of all the elements necessary to a just apportionment of the assessment." The foregoing is manifestly in line with the provision of section 3463 of the Political Code to the effect that the assessment-list of the commissioners or a certified copy thereof is *prima facie* evidence of the matters therein contained and that said assessment was levied in proportion to benefits to be derived from said works of reclamation. This presumption, under some circumstances, might be, and, no doubt, often is, sufficient to support a finding of the propriety and equality of the assessment, but here it can hardly be said that there is any room for the play of the presumption since the commissioners themselves testified directly and fully as to the method pursued by them in apportioning the charges upon the land and we must look rather to their testimony as a guide to what they did.

J. B. Lewis, one of the commissioners, testified: "The scale on which we assessed the lands was one to ten. As I understood it that was as little an assessment as we could put on any piece of land—one dollar, and ten dollars was as high as we could put on. We were not permitted to put on more than that and nothing less than that. That no land could be assessed for more than ten dollars and no land could be assessed for less than one dollar." Mr. George Forsythe testified to the same effect as to the scale and furthermore: "We went on the land and estimated principally from the map. We went on every piece of land. All three of the commissioners were together at the time of the assessment and talked the matter over." The other commissioner, H. L. Ward, testified similarly and, in addition: "In arriving at what would be the proper assessment we considered the benefits derived by the land. It depended first on the quality of the land. A good piece of land can be benefited more than a poor piece

can, that is nearly almost.   The other is the way it lies with reference to the levees and land lying close to the levee gets more seepage than the piece further away, the same quality of land a quarter of a mile from the levee is really benefited more than a piece of land adjoining the levee, and also a liability of land next to the levee to be damaged more than one further away.   We didn't take into consideration any of the old levied ditch banks or artificial barriers that would tend to protect some of the lands in the district, and those protected by these artificial means were assessed just the same as if the artificial protection had not been placed there.   We didn't take into consideration those ditch banks and other levees because they were in private ownership.   We didn't take into consideration the value of the lands at the time of the assessment and the probable enhancement of the value of the various pieces of land after the construction of these works. The basis was simply the benefit to be derived.   The benefit of real property would enhance its value if it was a benefit to it.   We didn't take into consideration that the lands of Mr. Cerini, lying north of the old levee, were subject to annual overflow, and were not sufficiently safe from flood to render them valuable for cultivation, while the lands lying south, and partially protected, were all in a state of cultivation.   We took into consideration simply what would be the benefit, assuming that these ditches or this old levee were not there at all.   We didn't take into consideration the present valuation of these lands and the probable increase of the several parcels after the construction of the new levee.   I consider that the increased value is a measure of the benefit.''   As to other land in the district he declared also that they did not take into account its value at the time of the assessment and its probable enhancement from the construction of the improvement.

In the first place, it may be remarked that the integrity of the commissioners is not called in question nor is it doubted that they acted in good faith, the attack being upon the method of the assessment and the accuracy of the result.   Nor is it claimed that absolute equality is possible or that insubstantial irregularities in the course pursued should vitiate the assessment made.   The contention is, however, that ''direct and invidious discrimination was practiced in favor of the landowners adjoining Murphy Slough,'' principally for the

reason that "this commission in apportioning the assessment failed to take into consideration the effect of the proposed improvement on the value of the lands adjoining Murphy Slough and which lands, previous to the construction of the levee, had never been and could not be cultivated, and which lands as shown by the evidence would increase to treble its former value."

We shall not attempt a full analysis of the course adopted by the commissioners. It may be suggested, though, that there was no warrant for their assumption that one dollar an acre was the lowest and ten dollars the highest assessment that could be levied. If they were satisfied that some of the land was benefited to the extent of twenty or more dollars per acre, and other land not more than fifty cents, they should have so apportioned the assessment.

Again, the scale adopted was an arbitrary one, and though it might be a convenience and not necessarily productive of injustice, the manner of its application, as declared by the commissioners, exhibits the element of conjecture as a prominent factor in the determination of the comparative values of the various tracts of land. It is also true, we think, that the commissioners should have taken into consideration the levees that had been constructed and their relation to the protection of the land from overflow. It is true that little importance might have been attached to this circumstance and small allowance made for it but it was a feature intimately connected with the consideration of any additional benefit that might be afforded by the construction of the proposed levee. The commissioners should take into consideration existing conditions of the land as it is at the time of the assessment. (*Reclamation District* v. *Burger,* 122 Cal. 447, [55 Pac. 156].)

But the most serious objection grows out of the indifference of the commissioners to the consideration of the value of the land at the time of the assessment and after the completion of the improvement. The only practicable and, it would seem, the only possible measure of the benefit to the land is found in its value. The land is benefited as its value is increased. If the land is increased in value to the extent of fifty dollars an acre it is, of course, benefited to that amount. The true method is to determine, then, the value of the land before and after the construction of the improvement and the differ-

ence is the measure of the benefit.    And this value is either
the intrinsic or the market value.    But whether one or the
other, the result is the same, since we have no way of deter-
mining the *intrinsic* except by applying the test of the *market*
value.    This matter is discussed in *City of Los Angeles* v.
*Pomeroy*, 124 Cal. 597, [57 Pac. 585], wherein it is held that
the market or exchange value of the property is the only
criterion of its actual value and "actual value," as used in
section 1249 of the Code of Civil Procedure, means "actual
market value."

There seems no dissent from the rule quoted by appellants
from the authorities as follows: "Undoubtedly, the simplest,
fairest, and most just rule and one which conforms to the
underlying theory of local assessments is that the existence
and amount of special benefits is to be determined by the effect
of the improvement upon the market value of the property
which it is claimed is benefited by such improvement.    If the
construction of such improvement increases the market value
of such property, such property receives a benefit and the
amount of such benefit is measured by the amount of such
increase."    (*Chicago Union Traction Co.* v. *Chicago*, 204 Ill.
363, [68 N. E. 519 and 69 N. E. 850]; *Marion Bond Co.* v.
*Johnson*, 29 Ind. App. 294, [64 N. E. 626]; *City of Allegheny*
v. *Black's Heirs*, 99 Pa. St. 154.)

*In re Furman Street*, 17 Wend. (N. Y.) 649, in an action
to determine the damages and benefits from the opening of
a street, it was said, through Bronson, J.: "There can be no
other practicable guide for the commissioners than the in-
trinsic value of the land and that value depends on the uses
to which it may be applied or the price it will bring in the
market."

In the case of *Lipes* v. *Hand*, 104 Ind. 503, [1 N. E. 871,
4 N. E. 160], in the consideration of an assessment for the
construction of drains, the court quotes with approval the
following from Judge Cooley: "The only safe and practicable
course and the one which will do equal justice to all parties
is to consider what will be the influence of the proposed
improvement on the market price of the property."

It is admitted that the landowner should not be charged
with general but with special benefits only and it is equally

clear that special benefits are coextensive with the augmentation of value.

Of course, the consideration of market value is a matter largely of opinion as is the question of benefits, but it is impossible to determine the latter apart from the former and no better test can be suggested or applied to the problem than the increased price that the land would probably bring in the market after the improvement is completed. Indeed, bearing in mind the fact that the benefit to the land is to be estimated by a pecuniary standard, it seems hard to conceive how any conclusion could be reached without considering the probable increase in the market value. The proper course is manifestly, as we have suggested, the commissioners applying their own knowledge of values and supplementing this, if necessary, by information obtained from others. Substantially this course should be adopted although there may be no conscious recognition of each definite step in the process.

It does not necessarily follow from the foregoing that an assessment made according to the method pursued by the commissioners here should be set aside. Such scale may be adopted and the land classified as was done, and unless the apportionment were shown to be clearly unequal and unjust, it should not be disturbed. Of course, the main desideratum is the conclusion as to the proportionate benefits. And the commissioners might make a substantially just and accurate adjustment by the method which they adopted. The trouble here is, however, that all the evidence shows a wide departure in the result reached from the proportionate increase in the respective values of the various tracts of land. We may take the testimony of S. Zanolini as an example of all the evidence on the subject: ''I am familiar with land values in that neighborhood. I know what the prices have been for the last twenty years, what has been sold. I know the market value of property generally in that neighborhood. I consider the market value of my land there about $125 an acre. In my judgment my land will not increase in value by reason of the old levee. I think Mrs. Adams's land without this new reclamation worth about as much as mine—the same with Mr. Andrews and Mr. Hancock. The lands lying north of this old levee and were subject to overflow only was worth about $30 an acre for what pasture they could get out of it. I would consider $30 an

acre a fair price for it. Assuming that this new reclamation levee will make that land as safe as the land south of the old levee, that land will be worth $125 an acre. It is better land than I have got, richer land. . . . I think that Mr. Harlan's, Mr. Barritt's and Mr. Schmidt's land north of the levee would have been worth about $30 an acre without reclamation. The land belonging to Mr. Barritt, Mr. Harlan and a portion of Mr. Schmidt's reclaimed by the new levee is worth about $125 to $150 an acre because it is good rich land.''

It is not contended that the assessment was anything like what the foregoing estimate would require, nor was any attempt made at the trial to refute the testimony of defendants and their other witnesses as to values.

It is stated by respondent that ''Many of the landowners within the district have paid their assessments without complaint. A few more objected to paying. We submit that, if any irregularities are found to exist in the assessment, they are not of sufficient importance to justify the invalidation of the entire assessment and the consequent entanglement of the affairs of the district.'' Such consequences, if possible, should, of course, be avoided. But according to the record before us the inequalities of the assessment are palpable and important and it would be a gross injustice to some of the landowners to enforce the charges as made by the commissioners. It may be suggested, also, that on a new trial plaintiff might be able to show that the assessment is not so greatly disproportionate to the increase in the values of the land as to demand a different adjustment.

But, as before indicated, the record showing no substantial conflict and all the evidence pointing to the conclusion that the assessment was not at all in proportion to benefits, we think the judgment and order denying the motion for a new trial should be reversed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was granted by the district court of appeal on January 26, 1914, and on May 23, 1914, on the rehearing thereof, the following opinion was rendered:

BURNETT, J.—When the cause was called for argument on the rehearing it was stated by its counsel that respondent had concluded to abide by the former judgment of this court reversing the lower court and that steps had already been taken to secure another assessment of the lands within the district. . It was furthermore stated that as far as respondent was concerned the petition for rehearing was the result of a misunderstanding on the part of one of the attorneys for the reclamation district. Respondent was willing to confess error, but, in view of possible embarrassment that might be occasioned to other districts if we should reaffirm the portion of the former opinion referring to the method of assessment by ascertaining the difference between the market value of the land before and after the improvement, it was suggested that the reversal be placed upon the other grounds discussed. There seems to be no valid objection to this course, and, while commending to commissioners the propriety of adopting the method of assessment outlined in the former opinion *ante,* p. 595, [141 Pac. 1079], for the purposes of this case it is not necessary to hold and we do not hold that said method is the only valid one that may be adopted to ascertain the proportionate benefits to the land.

For other irregularities stated and in accordance with respondent's admission of erorr, the judgment and order are reversed.

Chipman, P. J., and Hart, J., concurred.