[Civ. No. 1330.    Third Appellate District.—March 9, 1915.]

## JOHN FINNAN et al., Respondents, v. RECLAMATION DISTRICT NO. 273 et al., Appellants.

RECLAMATION DISTRICT—AMENDMENT OF 1911 TO SECTION 3462 POLITICAL CODE—VALIDITY OF.—There is no legal objection to the provisions of the amendment of 1911 to section 3462 of the Political Code (Stats. 1911, p. 644), in reference to the finality of proceedings before a board of supervisors for levying an assessment in a reclamation district, at least as far as their regularity and the question of apportionment of the assessment are concerned; and this can also be said of defects in the original petition as well as of other irregularities.

ID.—VOID ASSESSMENT—JURISDICTION OF COURT TO DETERMINE.—Such provision, however, does not have the effect of validating an act that is void—in other words, of making an assessment lawful, when the purpose of it is contrary to the law, and of placing beyond the reach of the general equity powers of the court the question of the jurisdiction or legal authority of the board to take any step at all toward the levy of an assessment.

ID. — PURPOSES OF ASSESSMENT — MUST BE FOR RECLAMATION. — It is fundamental that no person's property can be taken for a purpose not authorized by law; and land in a reclamation district must be assessed for reclamation purposes or the assessment cannot be lawfully enforced; and the order of the board of supervisors directing the assessment, if in excess of authority, is amenable to attack in an independent proceeding in a court of equity, it not being within the power of the legislature to divest such court of jurisdiction conferred by the constitution.

ID. — ILLEGAL ASSESSMENT — INCLUSION OF FORMER ILLEGAL ASSESSMENTS — CREDIT TO OWNERS WHO PAID. — A reclamation district assessment which includes the amounts of two former assessments declared illegal, and legal interest accrued thereon, and which provides that those landowners who have paid the former assessments shall be credited with such amounts, together with interest upon said several sums from the dates of their respective payments, is void, and section 3462 of the Political Code is ineffectual to validate such an assessment.

ID. — VALIDITY OF ASSESSMENT — DETERMINED BY STATUTE IN FORCE WHEN PROCEEDINGS COMMENCED.—Under section 3478 of the Political Code as amended in 1911 (Stats. 1911, p. 648), where a petition for an assessment and appointment of commissioners in a reclamation district was filed before said amendment of 1911, the validity of the proceedings must be determined by the statute in force at the time the petition was filed.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

F. E. Boland, McCutcheon, Olney & Willard, and Clary & Louttit, for Appellants.

A. H. Ashley, R. C. Minor, George F. McNoble, and F. O. Housken, for Respondents.

BURNETT, J.—On February 8, 1910, there was filed with the board of supervisors of San Joaquin County a petition

for the levy of an assessment, No. 3, of $167,006.90, upon
the 7047.80 acres of land in Reclamation District No. 773
(situated entirely in San Joaquin County) and, on the same
day, respondents, as the owners of 317 acres of land in said
district, filed with said board their protest against said levy
and, on February 25, following, they filed an additional pro-
test. The board of supervisors, however, appointed commis-
sioners to levy the assessment prayed for.

On June 12, 1911, the assessment-list made by said commis-
sioners was filed in the office of the county treasurer of said
county. It remained there until July 13, 1911, and was then
returned to the board of trustees of said district. That board,
on July 25, 1911, made its order directing that the total
amount of said assessment be paid. On January 29, 1912,
said reclamation· district brought an action, in the superior
court of said county, against respondents to recover $7,080.70,
the amount assessed against a portion of their land. Respond-
ents' demurrer thereto was sustained on the ground of the
want of facts. On March 13, 1912, an amended complaint,
verified by the secretary of said district, was filed in said
court. In this amended complaint the whole record of the
proceedings relating to this assessment No. 3 was set forth
either directly or by way of exhibits. On May 27, 1912, the
superior court sustained respondents' demurrer to said
amended complaint without leave to amend and, on May 31,
1912, judgment was entered accordingly. No appeal was
ever taken from that judgment. However, the assessment-
list, which had been filed with the county treasurer, was with-
drawn and, on July 15, 1912, it was presented to the board
of supervisors, which board made an order fixing August 6,
1912, for the consideration of said list and, on said date, the
board approved said assessment. On December 16, 1912,
respondents commenced this action in the superior court to
have said orders of the board of supervisors annulled and
to have it adjudged that said assessment was null and void,
that the district had no lien on the lands of plaintiffs and
that the defendant district, its trustees, officers, etc., be en-
joined from offering for sale or selling any portion of said
lands and for general relief. The complaint proceeds upon
the theory that the board of supervisors had no jurisdiction
to appoint commissioners to levy the assessment, that the
invalidity of said assessment was conclusively determined

by said judgment of May 31, 1912, and that, by reason of
the fraud of defendants, the plaintiffs were deprived of the
opportunity to contest the said assessment before the said
board. The findings and judgment were in favor of plain-
tiffs and were entered November 5, 1913. On February 3,
1913, another suit was also brought by plaintiffs for a writ
of *certiorari* to annul said order of the board appointing
commissioners and also the order approving the assessment-
list filed by said commissioners. The judgment in that ac-
tion was entered April 19, 1913, and was in favor of plain-
tiffs as prayed for. Appeals have been taken on separate
records from these last two judgments and it is manifest that
the vital questions involved therein are identical, the differ-
ence being as to the form of procedure that should have been
adopted in the court below. The action now being considered
contemplated and resulted in complete relief to plaintiffs and
the other was commenced because of doubt on the part of
plaintiffs as to the proper remedy to invoke.

In the first action, commenced, as stated, on January 29,
1912, defendants therein (plaintiffs here) took the position
not only that the complaint and also the amended complaint
failed to state sufficient facts to constitute a cause of action,
but that by reason of certain amendments to the reclamation
statute, approved April 5, 1911, the superior court had no
jurisdiction of the action. As to the latter objection, how-
ever, the trial court ruled against the defendants, but held
that no cause of action was or could be stated. As to the
jurisdictional question, Hon. J. A. Plummer, the trial judge,
in his opinion filed upon the demurrer to the original com-
plaint, declared: "In so far as the objection that the court
has no jurisdiction of this action by reason of the act of the
legislature approved April 5th, 1911, is concerned, the court
is of the opinion that section 18 of said act which becomes
section 3478 of the Political Code, completely answers the
contention of counsel for defendants and that under the pro-
visions of said section the action may be maintained." The
basis for the contention of said defendants (respondents
herein) that the court had no jurisdiction of said action, and
which contention, it may be said, is now the claim of appellant
herein (plaintiff therein), is found in section 3462 of the
Political Code as amended by said statute of 1911. Therein
it is provided that the assessment-list prepared by the com-

missioners "shall be filed with the clerk of the board of supervisors of the county." Prior to said amendment the section provided: "The list so made must be filed with the treasurer of the county." Said amended section also provides that the board of supervisors shall appoint a time for hearing objections to said assessments and shall give notice thereof by publication for two weeks; that any person interested in any of the land subject to the assessment may file written objections thereto; that the same must be considered by said board; that after hearing the evidence offered the board "may modify or amend the assessment in any particular, or make a reapportionment of the entire assessment." Furthermore, if the amount of any assessment be changed, another day must be appointed for hearing any objection to said assessment as thus changed and this procedure shall be followed "until the amount of each assessment shall be finally fixed and approved"; when the board of supervisors shall finally approve the assessment, such order shall be indorsed upon said assessment-list, signed by the chairman and attested by the clerk of said board, "and *such decision* of said board of supervisors *shall be final,* and thereafter said assessment-list shall be *conclusive evidence* that the said assessment has been made and levied according to law, except in an action commenced as hereinafter provided. The lists shall then be filed with the county treasurer. . . . No objection to such assessment shall be considered by the board of supervisors or *allowed in any other action or proceeding,* unless such objection shall have been made in writing to the board of supervisors as above specified." It is further provided that any person aggrieved by the decision of the supervisors may bring an action in the superior court to have said assessment corrected, modified, or annulled, but such action must be brought within thirty days after said assessment-list has been filed in the office of the county treasurer and "if said action shall not be commenced within thirty days, no action or defense shall thereafter be maintained *attacking the legality of said assessment in any respect.*" The subsequent section provides that from and after the filing of said list or a certified copy thereof with the county treasurer the charges assessed upon any tract of land shall constitute a lien thereon and shall impart notice thereof to all persons.

It is thus to be seen how ample are the powers conferred by this statute upon the trustees of the district and the board of supervisors and how limited is the time apparently in which proceedings must be instituted if any application is to be made to the superior court for a review of the action of these local boards in determining and fixing the assessment and its apportionment, such application to be made only if the property owner has filed his objections with the said board of supervisors. It is the contention of appellant that therein the legislature has clearly expressed its intention to provide an exclusive method of redress on the part of an aggrieved party and the conclusion follows that a landowner who fails to file his objections with the board of supervisors or to bring his action in the superior court within said thirty days is precluded from questioning in any subsequent proceeding the validity of said assessment, unless upon the ground that by reason of fraud he was prevented from pursuing the course therein prescribed.

The radical change made in the law was no doubt intended to avoid the long delays incident to the old procedure and to afford a prompt and effective agency for validating and collecting assessments. As pointed out in *Reclamation District No. 351* v. *Sels*, 117 Cal. 165, [49 Pac. 131], "the property owner is entitled to a hearing at one time or another upon the question of benefits," and before the passage of section 3493½ of the Political Code he made his showing when an action was brought to recover the assessment. But by the adoption of said section provision was afforded for an action by the district to be brought within one year to test and determine all questions relating to the validity of the assessment and therein the property owner could urge any available defense. In either case, however, protracted litigation often ensued and the payments were sometimes deferred for years, even if the court did not finally determine the assessment was invalid by reason of some technical defect in the proceedings and thus require the work to be done again from the beginning.

The principle of the amendment is, of course, commendable and, as far as we are advised, there is no valid legal objection to the provision in reference to the finality of said proceedings at least as far as their regularity and the question of the apportionment of the assessment are concerned. This can be said of defects in the original petition as well as of

other irregularities.   No doubt, an omission of a material fact from said petition or the absence of any petition at all could thus be cured.   This consideration is adverted to in *Wilcox* v. *Engebretsen*, 160 Cal. 288, [116 Pac. 750], wherein, in reference to the necessity for filing a petition to authorize the city board of trustees to make an order to change the grade of a street, it was said: ''Where a statute requires such a petition to be filed as a condition precedent to the making of such order, the board or council has no power to make the order until a sufficient petition has been filed.   This is settled by the cases of *Turrill* v. *Grattan*, 52 Cal. 97; *Mulligan* v. *Smith*, 59 Cal. 206, and *Kahn* v. *Board of Supervisors*, 79 Cal. 396, [21 Pac. 849], and as to that point there is no dispute. But the necessity for such petition is the creature of the statute.  It is not required by any constitutional guaranty. From this it follows that the statute may dispense with such requirement, or it may provide that the decision of the board or council, as to its sufficiency or any subsequent act depending upon it such as the issuance of bonds, shall be conclusive evidence of the fact that a sufficient petition has been filed. Such provision will be upheld as valid.   (*Chase* v. *Trout*, 146 Cal. 356, [80 Pac. 81].)   In the case just cited and in *German etc. Society* v. *Ramish*, 138 Cal. 130, [69 Pac. 89], it was held that the conclusive clause of the Street Improvement Bond Act of 1893 cured all such defects.''

But we do not understand that such provision has the effect of validating an act that is void—in other words, of making an assessment lawful when the purpose of it is contrary to the law, and of placing beyond the reach of the general equity powers of the court the question of the jurisdiction or legal authority of the board to take any step at all toward the levy of an assessment.

It is certainly fundamental that no person's property can be taken for a purpose not authorized by law.   Land in a reclamation district must be assessed for reclamation purposes or the assessment cannot be lawfully enforced.   The order of the board of supervisors, if in excess of authority, assuredly cannot be less amenable to attack in any independent proceeding than the judgment of a court of record, and yet, in *Bacon* v. *Bacon*, 150 Cal. 477, [89 Pac. 317], it was held that it is not within the power of the legislature to divest the jurisdiction in equity cases conferred by the constitution upon the supe-

rior court and that "jurisdiction could not be divested or affected by section 1666 of the Code of Civil Procedure, making the decree of distribution conclusive as to the rights of heirs, legatees or devisees" and that "the power of a court of equity to relieve against judgments is not confined to cases where they have been procured by fraud, but extends also to judgments wrongfully given by reason of mistake either of the court or of the injured party unmixed with fraud."

We think Judge Plummer was right in the following comments: "This provision of the code, however, must be limited and confined to acts of the board of supervisors upon matters over which they have jurisdiction. In other words, the law provides that boards of supervisors upon statements presented to them by boards of trustees of reclamation districts may levy assessments for certain purposes, particularized and specified in the codes. When it is shown that trustees have asked for the levy of an assessment in accordance with those provisions, and for the purpose for which assessments are allowable; and that the board of supervisors has acted therein within the limits prescribed by the code, then and in that event the action of the board of supervisors will be deemed final and conclusive. But whenever it appears that an assessment has been levied for purposes other than those specified in the code, section 3462 certainly cannot be held to validate such an assessment and preclude an inquiry as to the same by an owner whose lands are about to be sold under proceedings (or for purposes) having no warrant in law. . . . If this is not a correct statement of the law, then the property rights of an owner of land within a reclamation district are subject to the whims and caprices of those who may happen to be the trustees of a reclamation district."

In said opinion it is also said: "It appears by the statement filed with the board of supervisors on February 8, 1910 (upon which this proceeding rests), that $115,397.90 of the assessment for $167,006.90 asked, are inserted in said statement for the purpose of covering two prior assessments declared illegal, and legal interest accrued thereon, and that this assessment-list presented to the board of supervisors and approved by it, is, in fact, an assessment, to the extent of (at least) $115,397.90, to overlap and cover said former illegal assessments. It is further stated in said report that certain landowners had not paid such illegal assessments, that cer-

26 Cal. App.—46

tain other landowners had paid the same, and that the treasurer of San Joaquin County must credit the several paying landowners, upon this (or any following) assessment, with the amounts paid by them upon the said asessments declared illegal, together with interest upon said several sums from the dates of their respective payments (the amounts of said payments and interest to be applied to the payment of any assessment thereafter levied). For this purpose, the report asks that there be included in this assessment the amounts so paid by the several landowners upon the said two illegal assessments, together with interest thereon from the several dates of payment to February 7, 1910. Then follow interest items aggregating $12,661.90. It will be noted that there is no provision either in the old code, or in the amended code, which authorizes an assessment for any such purpose; and there is no provision in the amended code, which authorizes the board of trustees of any reclamation district, or any officer thereof, to allow any such credit. Section 3466½ is the sole measure of both the mode and the power of adjusting assessment burdens under such conditions, to wit: a separate assessment according to benefits derived (not to expense incurred) or a reassessment." It may be said that respondents claim there were other fatal defects in said assessment but they need not be noticed.

Briefly stated, it was, therefore, the opinion of the lower court not only that under the amended statute a court of equity could inquire into the legal authority for the assessment and that in the instant case the assessment was invalid, but also that the whole proceeding as to the levy and collection of said assessment was to be measured by the statute as it existed when the petition was filed with the board of supervisors and, hence, that the court had jurisdiction of said action of January 29, 1912, and that its judgment therein was a conclusive determination of the invalidity of said assessment. It is conceded by appellants that such was the effect of that judgment if the old law was operative. That question undoubtedly depends upon the proper construction of said section 3478 of the Political Code as amended by said act of 1911, [Stats. 1911, p. 648].

The language of that section is as follows: "All reclamation districts now legally existing in this state, which were created by or formed under the provisions of any statute of

the state, shall henceforth be subject to the provisions of the Political Code of the state of California relating to reclamation districts the same as though such districts had been formed by or created under the provisions of said code relating to 'swamp and overflowed salt marsh and tide lands'; provided that this provision shall not affect any proceeding that shall have been already commenced for the levy or collection of assessments in such districts when this act takes effect, nor shall it affect any act done or performed in relation to the affairs of such districts prior to such last mentioned date.'' It is true that the assessment had not been actually levied but the proceeding had "been already commenced" for the levy and collection of said assessment. The filing of the petition for the assessment and the appointment of the commissioners, as already seen, took place long "prior to such last mentioned date." These prior acts were indeed important only as a part of the process for the levy and collection of the assessment. In fact, their only purpose was to lay the legal foundation for said assessment, and it seems to have been the intention of the legislature that where the initiatory steps had been taken the course was to be pursued to the end under the old statute. If this is the right view then the said action brought by the trustees in January, 1912, was expressly authorized by the law and was concededly final, as before stated.

As the matter is presented here we think the judgment should be affirmed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 8, 1915, and on May 26, 1915, that court rendered the following opinion:

THE COURT.—In the opinion heretofore filed in the above entitled cause in this court through inadvertence no formal disposition was made of the appeal from the order denying defendants' motion for a new trial; for the reasons therefore stated in said opinion the order denying said motion for a new trial is affirmed.