[Civ. No. 2565.    Third Appellate District.—February 24, 1923.]

JOHN C. RICHARDSON et al., Appellants, v. J. W. BROWNING et al., as Board of Trustees, etc., Respondents.

[1] RECLAMATION DISTRICTS—MAINTENANCE—FUTURE MAINTENANCE—APPORTIONMENT AND LEVY OF ASSESSMENTS — CONSTRUCTION OF CODE.—The reasonable view of sections 3455, 3456b, and 3459 of the Political Code, relating to reclamation district assessments, is that the legislature thereby intended that the assessment for maintenance made before the completion of the works should cover only the period of construction and that it should be apportioned and levied as prescribed in section 3455, but the assessments for future maintenance should be governed by the provisions of section 3456b.

[2] ID.—EXCESSIVE ASSESSMENT—REMEDY OF LAND OWNER.—It was undoubtedly the purpose of the legislature to provide in section 3462 of the Political Code an exclusive remedy for the land owner against an excessive or illegal reclamation district assessment, as therein a tribunal is designated for the hearing and determination in the first instance of any objection that might be made by a land owner, and in case of an adverse decision an action may be brought in the superior court to correct or annul the assessment.

[3] ID.—ASSESSMENT FOR MAINTENANCE—FAILURE TO MAKE OBJECTIONS—EFFECT OF.—Where in levying an assessment for the maintenance of a reclamation district all the steps required by the statute were taken by the board of trustees and by the board of supervisors, and no objections were made by the land owners before either board, an action in equity cannot be maintained by

them under section 3462 of the Political Code to enjoin the collection of the assessment on the ground that it is excessive and that it should have been differently apportioned.

APPEAL from a judgment of the Superior Court of Butte County. J. O. Moncur, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

King & King for Appellants.

A. H. Hewitt for Respondents.

BURNETT, J.—This action was begun in the superior court of Butte County on June 2, 1922, for the purpose of "restraining and enjoining them [the trustees of Reclamation District No. 833] from proceeding in any manner to levy, assess or collect said assessment No. two, or in any manner, or by any bond issue whatsoever, attempting to proceed with the collection of said assessment number two of said district No. 833; and that no further proceedings whatsoever be had by the Board of Trustees of said Reclamation District in connection therewith; and that this Honorable Court decree and adjudge that all proceedings heretofore had by said Board of Trustees in connection with assessment number two are void and of no effect and as in excess of and beyond the jurisdiction of said Board; and that a writ of injunction issue on an order to show cause enjoining and restraining said Board of Trustees from proceeding in any manner with the levy, collection and furtherance of said assessment number two and for further relief."

An alternative writ and a temporary restraining order were issued by the superior court, and on the return day a general demurrer was filed. This was sustained by the court, and from the judgment entered thereon dismissing the action and vacating the temporary restraining order the appeal has been taken.

The complaint, after setting forth the regularity and validity of the organization of the district and the election and qualification of defendants as members of the board of trustees, proceeds:

"That on the 18th day of August, 1921, said trustees approved and adopted certain plans and report, by them

designated, 'First Supplemental Plan and Report of Reclamation District No. 833,' and the estimates of the cost of the work of reclamation done and to be done, both under the original plan as modified and changed by said supplemental plan and report and under said supplemental plan and report, were also approved and confirmed. Said plan and report recites that theretofore there had been assessed against the lands of said district to meet the expenses and costs estimated in the original report and plan of reclamation in the sum of $500,000; that work under said original plan was then progressing, and the sum of $345,855.22 had already been spent under said original plan, and approximately thirty-six per cent of the work provided to be done under the original plan had been completed; that the difference between the cost of the work to be done under the original plan, including expenses of all character, as therein estimated, and the estimated cost of the same as shown in the supplemental plan and report is the sum of $725,099.32; and the estimated cost of new work provided in the supplemental plan is the sum of $71,835.47, and the estimated amount to be raised for maintenance for the period of twenty years is the sum of $202,065.21, making a total amount to be raised to complete the reclamation of the lands of the district in the sum of $1,000,000. That said plan and report was filed in the office of the County Clerk of Butte County on the 19th day of August, 1921."

It appears further that on October 11, 1921, said trustees presented to the board of supervisors of the county their petition for the appointment of commissioners to view and assess upon the lands of the district and to apportion the same according to benefits the said sum of $1,000,000, reciting in said petition that the amount to be raised for the work done and to be done is the sum of $759,357.10; the amount for maintenance for the period of twenty years, the sum of $202,065.21, and for incidental expenses, $38,597.69; that said petition was granted, the commissioners appointed, who made and apportioned the assessment on said lands and filed their assessment list on May 3, 1922, with the clerk of said board of supervisors, "and proceedings had and taken thereon as under an original assessment pursuant to the provisions of law respecting an original assessment."

Then follows an allegation that on May 11, 1922, said trustees ordered a special election to be held on Tuesday, June 6, 1922, at Gridley, in said district, to vote upon the question whether bonds of the district shall be issued to the amount of $1,000,000; that said assessment is about to be approved and confirmed by the board of supervisors and proceedings had by the trustees whereby either bonds will be issued and sold or payment demanded of petitioners of their proportion of said assessment in a very large sum of money; that it nowhere appears that it will require twenty years to complete the work of reclamation and that all of said reclamation works, as estimated in the original and supplemental plans, were substantially completed on or about January 1, 1922, and "said trustees well knew at all times herein mentioned that all of said proposed reclamation works would not, nor could not, require twenty years . . . and that said trustees have not since the completion of said reclamation works instituted any proceedings to obtain maintenance funds as provided by section 3456, subdivision B, of the Political Code. . . .

"That the said proceedings had and made in connection with said assessment No. two are unlawful and in excess of the jurisdiction of said Board of Trustees, in this; that said Board has no jurisdiction to combine in one assessment, an assessment for reclamation works and incidentals, with another assessment for prospective and future maintenance over a long period of time; that said future maintenance assessment of $202,065.21 can be based only on assessment valuations as provided in section 3456b of the Political Code, and in the form and manner as therein provided; and can not be combined with the assessment for reclamation works and incidentals as provided by law; that so to do was and is beyond the jurisdiction of said Board of Trustees and in excess of the powers delegated or authority vested in said Board by law."

The foregoing is sufficient to indicate the ground of petitioners' alleged grievance. It is apparent that the trustees acted under the authority and direction of section 3455 of the Political Code providing that:

"(1) The board of trustees of such reclamation district must report to the board of supervisors of the county in which the district, or the greater part thereof is situate, by

61 Cal. App.—8

filing with the county clerk of said county two copies of every new, supplemental, or additional plan, if any, together with estimates of the cost of the contemplated works of the district, including incidental expenses, maintenance and repairs, necessary for the reclamation of the lands of the district in pursuance of any such plan.

"(2) Thereupon the board of supervisors of such county must appoint three commissioners. . . . Said commissioners must view and assess upon the land within said district the said sum so estimated and shall apportion the same according to the benefits that will accrue to each tract of land in said district, respectively, by reason of the expenditures of said sums of money, and shall estimate the same in gold coin of the United States," etc.

But it is the claim of appellants that to meet the expense of the future maintenance of the reclamation district the trustees should have proceeded under said section 3456b providing:

"In all cases when the work contemplated by the original or any supplemental plan of reclamation of any reclamation district shall have been completed, the trustees may so report to the board of supervisors of the county in which the district, or the greater part thereof is situate, together with a petition to the said board of supervisors to appoint assessment commissioners. Said report and petition shall set forth that the work contemplated by the original or supplemental plan of reclamation has been completed, and that hereafter said reclamation district will only require funds for the maintenance and repair of the said works of reclamation. Upon filing said report and petition the said board of supervisors shall appoint three commissioners, each of whom shall be similarly qualified, and shall make and subscribe the same oath as is provided hereinabove for commissioners, when so appointed and so qualified such commissioners shall prepare an assessment list, which list shall contain the following information in separate columns. . . . Thereafter said assessment valuations shall be used as a basis for assessments in raising funds for the maintenance and repair of the works of reclamation and incidental expenses of said district. . . .

"Thereafter, whenever in the opinion of the trustees of the district, it shall be necessary to raise any sum for

the construction, maintenance or repair of the works of
reclamation, or for the incidental expenses of the district,
the said board of trustees shall make an order, which order
shall be entered in the minutes of the board and shall recite
the total amount necessary to be raised and shall fix a rate
designating the number of cents to be levied on each hun-
dred dollars of assessment valuation shown in the list pre-
pared and approved in the manner hereinabove provided.''

In support of their contention that the trustees have no
discretion to proceed otherwise than as provided in said
section 3456b, appellants have traced the history of the
legislation upon the subject, and they assert that ''the
species of maintenance provided for in section 3455 and the
second clause of section 3459 was clearly limited to the
duration of actual construction and there was before 1917
no provisions for maintenance after completion,'' but in
that year the legislature saw fit to depart from the former
uncertain and irregular method of raising maintenance
funds and by said section 3456b was provided a ''definite
and reasonable way for the maintenance of the district
after completion of the reclamation works.'' The clause of
said section 3459 to which appellants refer provides: ''If
the original assessment is insufficient to provide for the
complete reclamation of the lands of the district, or if
further assessments are from time to time required to pro-
vide for the protection, maintenance and repair of the
reclamation works, the trustees may file with the clerk of
the board of supervisors of the county in which the district
or the greater part thereof is situated two copies of the
plan of reclamation and a statement of the work done or to
be done and its estimated cost, and the same proceeding
shall be had thereon as provided in section three thousand
four hundred fifty-five for an original plan of reclama-
tion.''

Appellants contend that the two methods are entirely
irreconcilable, since the basis for the assessment for con-
struction of the works is the benefit to accrue to the land,
while for future maintenance it is the assessed valuation.
It is furthermore claimed that, if the two sections are in
conflict, 3456b, being later in time and in numerical order,
must prevail over 3455 and should be regarded as pre-
scribing the only rule of procedure for expenditures in

maintenance after the completion of the works. (*People* v. *Dobbins,* 73 Cal. 257 [14 Pac. 860]; sec. 4484, Pol. Code.) In this connection, however it is to be observed that section 3459, as we have quoted it, was enacted at the same time as section 3456b (Stats. 1919, p. 604), and the rule of construction prescribed by said section 4484 is: "If conflicting provisions are found in different sections of the same chapter or article, the provisions of the section last in numerical order must prevail, unless such construction is inconsistent with the meaning of such chapter or article."

Said section 3459 does undoubtedly authorize the trustees to proceed according to the directions in section 3455, not only in providing for the complete reclamation of the lands but also for the "maintenance" of the district without prescribing any limit as to the time of said maintenance.

[1] However, the reasonable view of these various sections is that the legislature thereby intended that the assessment for maintenance made before completion of the works should cover only the period of construction and that it should be apportioned and levied as prescribed in said section 3455, *but* the assessments for future maintenance should be governed by the provisions of said section 3456b. Manifestly, it is difficult, if not impossible, to determine in advance with accuracy what the cost of maintenance would be for twenty years in the future, and why the trustees should have attempted it is probably known to themselves, but the reason does not appear upon the face of the record. We may assume, though, that in the sale of bonds and in the collection of the assessment the burden will be made as light as possible upon the property owners. Of course, the purpose of the reclamation legislation is commendable, but it is a matter of common knowledge that many farmers are staggering under the load of taxation thereby imposed, and it is but a truism to say that the trustees of these districts, clothed as they are with almost unlimited power to tax, which may be exercised so as to destroy the value of lands within the district, should exercise the power with the utmost regard for the welfare of those who carry the burden.

But it does not appear to us that the act complained of was void, so as to be set aside in this proceeding.

Said section 3455 provides for notice to be given by the trustees of a hearing of any objections that may be made to the plans and estimates and (subdivision 5) ''when said reclamation board shall have taken action approving, modifying, or rejecting any such original, supplemental or new plan of reclamation after a hearing as herein provided, such action shall be final, and thereafter the sufficiency of said plans shall not be subject to attack either before the reclamation board or in any court.'' Herein it does not appear that appellants made any objection to said action of the trustees, nor is it questioned that notice of the hearing was given as required by the statute.

After providing for the appointment of commissioners of assessment and prescribing their duties and what the assessment lists shall contain and where they shall be filed, and requiring notice to be given of the hearing of any objections to said assessment and authorizing the board of supervisors to hear any evidence that may be offered at said hearing and to modify or amend the assessment in any particular or to make a reapportionment of the entire assessment, the legislature, in section 3462, has provided as to the final order of the board of supervisors approving the assessment that ''such decision of said board of supervisors shall be final, and thereafter said assessment list shall be conclusive evidence that the said assessment has been made and levied according to law, except in an action commenced as hereinafter provided. . . . No objection to such assessment shall be considered by the board of supervisors, or allowed in any other action or proceeding, unless such objection shall have been made in writing to the board of supervisors as above specified.

''Any person aggrieved by the decision of the board of supervisors may commence an action in the superior court of the county in which the greater part of said district is situated to have said assessment corrected, modified or annulled. Such action must be commenced within thirty days after said assessment list has been filed in the office of the county treasurer.''

[2] It is not disputed that all the steps required in said statutory proceeding were taken by the trustees and supervisors as therein prescribed, and it is not claimed that appellants made any objections whatever before the board

of trustees or the board of supervisors. Indeed, it affirmatively appears that, at the time this action was brought, said ·assessment, which is herein challenged, was before said board for modification, amendment, or reapportionment, and it had not become final. It was undoubtedly the purpose of the legislature to provide in said section 3462 an exclusive remedy for the land owner against an excessive or illegal assessment. Therein a tribunal is designated for the hearing and determination in the first instance of any objection that might be made by a land owner, and in case of an adverse decision an action may be brought in the superior court to correct or annul the assessment.

[3] We understand that this section would not operate to curtail the power of a court of equity to entertain an original proceeding to nullify an assessment in case of fraud or where it has been levied for a purpose not authorized by law (*Finnan* v. *Reclamation Dist. No. 273*, 26 Cal. App. 714 [148 Pac. 227, 152 Pac. 1197]), but we·have no such case. No element of fraud is suggested by the complaint nor is it claimed that it was not competent for the board of trustees to provide for the assessment of the lands for ''maintenance'' of the reclamation district, but the objection goes to the time and amount of the assessment— questions which appellants should have presented to the board of supervisors as required by said section 3462. The contention of appellants really amounts to this, that the assessment was excessive and that it should have been differently apportioned. The policy of the law is to expedite the determination of such objections by requiring the pursuit of the method set forth in said section, and there seems to be no reason why it should not be regarded as furnishing an exclusive remedy in this case.

The subject is more elaborately considered in the Finnan case, *supra,* and we deem it unnecessary to prolong the discussion.

The judgment is affirmed.

Finch, P. J., and Hart, J., concurred.