[Sac. No. 4737. In Bank.—March 1, 1934.]

STUART S. HAWLEY, Respondent, v. RECLAMATION DISTRICT No. 730, Defendant; EMMA SNOWBALL et al., Interveners and Appellants.

[Sac. No. 4738. In Bank.—March 1, 1934.]

H. W. MEEK ESTATE INCORPORATED (a Corporation), Respondent, v. RECLAMATION DISTRICT No. 730, Defendant; EMMA SNOWBALL et al., Interveners and Appellants.

[Sac. No. 4739. In Bank.—March 1, 1934.]

RIVER FARMS COMPANY OF CALIFORNIA (a Corporation), Respondent, v. RECLAMATION DISTRICT No. 730, Defendant; EMMA SNOWBALL et al., Interveners and Appellants.

[Sac. No. 1470. In Bank.—March 1, 1934.]

*KNIGHTS LANDING RIDGE DRAINAGE DISTRICT, Respondent, v. RECLAMATION DISTRICT No. 730, Defendant; EMMA SNOWBALL et al., Interveners and Appellants.

---

*REPORTER'S NOTE.—A rehearing in the case of *Knights Landing Ridge Drainage District* v. *Reclamation District No. 730* was granted by the Supreme Court on March 29, 1934.

Devlin & Devlin & Diepenbrock and H. B. Wulff for Appellants.

Arthur C. Huston, Jr., Stephen W. Downey, Downey, Brand & Seymour and Frederic P. Pierce for Respondents.

WASTE, C. J.—Reclamation District No. 730, one of the defendants in these consolidated cases, was organized in 1902 under the provisions of the Political Code applicable to the formation of reclamation districts. In 1907, an assessment (the first) was levied under a plan which called for the "raising" of a levee along the Sacramento River which apparently was in existence when the district was formed. In 1909, a new (second) assessment was spread under plans for securing additional rights of way for the district's levee system, to further raise the river levee, and to provide for a district drainage system.

Thereafter, in 1911, the Sacramento Valley flood control plan was adopted (Stats. 1911, Ex. Sess., chap. 25, p. 117). Pursuant to, and as a component part of this comprehensive plan, the Knights Landing Ridge Drainage District was formed for the purpose of constructing a canal or cut to carry overflow, drainage, and "run-off" waters from Colusa basin, on the north, through and over the territory embraced in Reclamation District No. 730, to the Yolo by-pass, on the south. The drainage district embraces within its borders Reclamation District No. 730 and other territory, none of which lands could be successfully reclaimed without the construction of the canal. Its construction, to which the Reclamation District No. 730 gave consent, divided that district into two approximately equal parts, the easterly unit lying between the canal and the levees along the Sacramento River. The lands of these plaintiffs are situated in

the westerly unit of the reclamation district. The canal, or cut, is a surface canal of sufficient proportions to give it a capacity of 20,000 cubic feet per second, and is protected by a levee of substantial construction and dimensions on either side.

In 1917, and after the canal and its protecting levees were constructed, Reclamation District No. 730 adopted another (third) plan calling for bringing the district's river levee up to specifications required by the general flood control plan, *supra*. Two drainage systems — one for each side of the canal—were included in the contemplated improvement. Pursuant to the statutory requirements, assessors to determine the benefits were appointed in 1918 to spread an assessment amounting to $110,386 on the lands in the district. They did so, assessing for the drainage systems separately, the east side of the district paying for the east side drainage works, and the west side paying for the west side works. The cost of raising the river levee was charged eighty per cent to the lands constituting the east side, and twenty per cent to the west side. The work was done, and a considerable portion of the assessment was paid, but a large deficiency remained, for the payment of which, and for certain other purposes, a fourth assessment, the one here in question, was levied. Included in this assessment, which amounted to $225,000, was $108,414.23 for work on the river levee, and $98,606 for deficiencies under the 1918, or third, assessment.

Assessors, who appear from the record to have been experienced and qualified experts, well acquainted with the various projects concerned, viewed the lands affected, studied the plans for the work, and in 1928 spread a supplemental assessment (the fourth) according to their estimates of the benefits derived. They unanimously spread the assessment for the river levee improvement eighty per cent to the east side, and twenty per cent to the west side, assessing for certain expenditures authorized by the plan on the two drainage systems separately. In other words, in determining the benefits, these assessors arrived at the same results as did the commissioners who spread the original assessment of 1918. As will later appear, the determination of the benefits by these assessors is the same determination

of benefits later approved by the court in its findings and in support of its judgment, which gave rise to these appeals.

When presented to the board of supervisors, as provided for in section 3456 of the Political Code, that board, after objections filed and hearings had, directed that the assessment of $108,414.23 for work on the levee be modified and "reapportioned in accordance with the benefits derived therefrom", and that "fifty-five per cent (55%) thereof be levied and assessed against the lands lying east of the center of the Knights Landing Ridge Drainage District Canal, and that forty-five per cent (45%) thereof be levied and assessed against the lands lying west of the center of the Knights Landing Ridge Drainage District Canal". Following the final order approving and establishing the assessment as re-apportioned, the actions authorized by section 3456 of the Political Code and now here on appeal were commenced in the superior court. The plaintiffs, other than Knights Landing Ridge Drainage District are parties owning lands on the west side of Reclamation District No. 730. Their purpose is to cancel and annul the assessment (No. 4) as re-apportioned by the board of supervisors, and to have their property in Reclamation District No. 730 assessed according to the actual benefits derived by the lands by reason of the works of reclamation and drainage called for by the plan for additional and supplemental works leading to the assessment. The Knights Landing Ridge Drainage District, the other plaintiff, contends that it has derived no benefit, and also that any assessment against it in the premises is without authority of law and is null and void. Reclamation District No. 730 was made the defendant to the actions, for the reason that it represented all the land owners in the district. A number of land owners on the east side of the reclamation district intervened in support of the defendant district and the legality of the supplemental assessment as approved by the board of supervisors. After a comprehensive hearing, at which considerable evidence was introduced and many exhibits submitted, the trial court made findings to the effect that the board of supervisors acted arbitrarily and abused its discretion in making and approving the assessments, and as already noted, fully supporting the contentions of the plaintiffs that the assessments complained of exceeded the benefits

derived from the work. Judgment was entered in their favor. A new trial was denied, and the interveners appeal from the judgment.

It was the contention of the respondents, other than the Knights Landing Ridge Drainage District, in the court below, and is here, that their lands on the west side of the Knights Landing Ridge Drainage District canal and levees received no benefit from the work on the river levee, because if that levee should break and the east side of the reclamation district be flooded, the waters would flow · out of the district over its south levee and into the Yolo by-pass without endangering the two strong levees of the Knights Landing Ridge cut, and without reaching or imperiling the west side lands. There was much evidence to support this contention. Testimony supporting a contrary contention advanced by the interveners only served to raise a contra- dictory situation in the evidence, which the trial court decided in favor of the plaintiffs' cause. We therefore deem it unnecessary to dwell on the facts brought out in support of the respective contentions of the parties. The only result would be to emphasize the correctness of the court's findings on the question of the lack of benefits to plaintiffs' properties.

■ That the superior court had complete jurisdiction to entertain and to proceed and hear the causes of the plaintiffs is determined by the provision in section 3456 of the Political Code, which provides that: "Any person aggrieved by the decision of the board of supervisors may commence an action in the superior court of the county in which the greater part of the said district is situate, to have said assessment valuations corrected, modified or annulled." In the cases here, the judgment corrected and modified the assessments levied on plaintiff land owners' lands by reducing the amounts approved by the supervisors to the amounts originally fixed by the assessors, declaring the amount of the assessments in excess of the assessments as modified to be illegal and invalid, and annulling them to that extent. We find nothing in the judgment exceeding the power the court is given by the statute. ■ The interveners, who are the only appellants here, may not complain that they have not had their day in court, for, in addition to being represented by the district, which answered and de-

fended the actions, they intervened as defendants to resist the claims of the respective plaintiffs, and were actual and active parties to the actions in court.

That the superior court sitting in these cases had jurisdiction, and that it acted judicially and not in any legislative capacity is well established by the decisions of the courts of this state. It had jurisdiction and power to determine for itself whether, and to what extent, the land owners before it had been benefited by the works of reclamation covered by the assessment in question, and had power to declare an assessment invalid in so far as it purports to create a charge against their lands. (*Reclamation Dist. 108* v. *Evans,* 61 Cal. 104.) In *Richardson* v. *Browning,* 61 Cal. App. 110 [214 Pac. 281], the court held that in enacting in section 3462 of the Political Code a provision for a court action like that provided in section 3456, *supra,* it was undoubtedly the purpose of the legislature to provide an exclusive remedy for the land owner against an excessive or illegal assessment. Therein a tribunal is designated [the board of supervisors] for the hearing and determination in the first instance of any objection that might be made by a land owner, and in case of an adverse decision an action may be brought in the superior court to correct or annul the assessment. The benefits that are derived are questions of fact to be determined by the district in the first instance and finally by the trial court. (*Hershey* v. *Reclamation Dist. 108,* 200 Cal. 550, 571 [254 Pac. 542].) In *Abel* v. *Reclamation Dist. 2047,* 201 Cal. 451 [257 Pac. 504], this court held actions like those now here to be judicial. At page 455, the court said: "Much must be left to the sound judgment and discretion of the officers appointed by law to determine the question of benefit in reclamation and drainage matters and finally to the court which makes a *judicial review* of the proceedings." (Italics supplied.) The court, in determining questions relating to the proper apportionment of the assessment, was acting judicially. (*In re Sutter-Butte By-Pass Assessment,* 190 Cal. 532, 538 [213 Pac. 974]; see, also, *Athearn* v. *Nicol,* 187 Cal. 86, 95 [200 Pac. 942].)

It is contended by the appellants that the court below had no power or jurisdiction to change the assessment levied against any tract of land in the district, or to re-

apportion the entire assessment. We do not interpret the judgment as doing more than reducing the assessments in question to correspond with the benefits accruing in each case, and declaring the excess invalid and void. By such action it has corrected the assessments under the power conferred by the section (3462, *supra*), but has gone no further. It has not attempted to re-apportion the old, or to levy or spread a new assessment. If that is to be done, Reclamation District No. 730 must do it. Section 3466½ of the Political Code (the first section bearing that number) provides that in all cases in which an assessment levied for reclamation purposes upon lands embraced within a district is thereafter adjudged invalid by any court of competent jurisdiction, or shall be adjudged invalid as to any tract or tracts of land within such district, a new assessment may be levied on the lands of the district in the form and manner provided by the section. Such subsequent assessment, or new assessment, shall be made by commissioners appointed by the board of supervisors, as provided in section 3456 of the same code, and must be made and approved in the same manner as other assessments. The judgment of the court in these cases does not purport to do what "officers appointed by law" must do.

■ Finally, the appellants urge the contention that the presence of the cut and canal banks (the latter consisting of the two substantial levees or retaining walls already referred to) of the Knights Landing Ridge Drainage District must be ignored in spreading or equalizing the supplemental assessment. Therefore, they claim, the court's judgment, predicated in part on the fact that the canal and banks protected the west side lands of respondents, thereby lessening the danger of floods in case of the breaking of the river levee, was erroneous. The canal and accompanying works were completed years before the assessment was levied. The statute requires that the commissioners shall apportion the assessment "according to the benefits that will accrue to each tract of land in said district, respectively, by reason of the expenditure of said sum of money". (Pol. Code, sec. 3456.) This means that existing conditions of the land at the time of the assessment should be taken into consideration. (*Reclamation Dist. 537* v. *Burger,* 122 Cal. 442, 447 [55 Pac. 156]; *Reclamation Dist.*

*108* v. *West,* 129 Cal. 622 [62 Pac. 272]; *Riverdale Reclamation Dist. 805* v. *Shimmin,* 24 Cal. App. 595 [141 Pac. 1070].) Benefits to be derived from reclamation works are to be measured by the degree of protection such work affords from the menace of floods. Such benefits are those only which spring from the system of works which such assessment is levied to construct or maintain. (*Reclamation Dist. 108* v. *West, supra.*) Shortly after Reclamation District No. 730 gave consent to and authorized the construction of the canal by the drainage district, and the canal was constructed, the district, in spreading the third assessment, that of 1918, to cover the costs of raising the river levee, took into consideration the presence of the canal and works. It was proper to do so again when it came to levy the present, or supplemental, assessment.

Appellants have attacked the judgments from many points of view, along many lines of argument, and angles of approach. We have given due consideration to what we deem the important questions raised by the appeals in the cases instituted by the plaintiff land owners of the west side. The judgments in their favor, and each of them, should be affirmed.

The judgments in the three land owners' cases (Sac. Nos. 4737, 4738 and 4739) are, and each is, affirmed.

Curtis, J., Langdon, J., Preston, J., Shenk, J., and Thompson, J., concurred.