[Civ. No. 35684. First Dist., Div. One. Jan. 26, 1976.]

CHARLES PHILIPPART, Plaintiff and Appellant, v.
HOTCHKISS TRACT RECLAMATION
DISTRICT 799 et al., Defendants and Appellants.

**COUNSEL**

Bray, Baldwin, Egan & Breitwieser for Plaintiff and Appellant.

Rockwell & Rogers and Richard Rockwell for Defendants and Appellants.

**OPINION**

**WEINBERGER, J.**[*]—This is an action for declaratory relief in the form of an election contest. The action was commenced in the Contra Costa County Superior Court by Charles Philippart (hereinafter contestant) who was an unsuccessful candidate for election to the office of Trustee of Hotchkiss Tract Reclamation District 799 at the regular election on November 6, 1973. His principal contention is that respondent Ernest Burroughs received more votes than he did because the election was conducted in compliance with Water Code section 50704, which provides in part that: "Each landowner or legal representative in the district may vote at any election in person or by proxy, and may cast one vote for each dollar's worth of real estate owned by him or his principal in the

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

district, as determined from the last equalized tax roll of each county in which the lands of the district are situated. . . ."

The trial court concluded that "The provisions of Section 50704, of the Water Code, that apportion votes in district elections on the value of land in the district as determined from the equalized tax roll of the county, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution," and, "Votes in a Reclamation District election must be apportioned among the landowners in the district as determined from the Operation and Maintenance Assessment Roll of the district."

The judgment from which this appeal is taken by the trustees required Hotchkiss Tract Reclamation District 799 to conduct a new election. The contestant, by cross-appeal, purports to appeal from a statement in the trial judge's memorandum of decision declaring the "one-man one-vote" principle inapplicable to the instant case.

The basic issue for our determination is the constitutionality of Water Code section 50704. Weighted voting by landowners dependent on the acreage owned has been upheld in special district elections when the state has a compelling interest in the functions of the district and the district's board does not exercise general governmental powers over the residents. (*Schindler* v. *Palo Verde Irrigation Dist.* (1969) 1 Cal.App.3d 831 [82 Cal.Rptr. 61].) While *Schindler* is concerned with an irrigation district formed under a special act of the Legislature dealing with a unique problem which existed in the Palo Verde Valley, its applicability to the case at bench may be discerned from the following paragraph (at p. 839): "The state clearly has a compelling interest in the reclamation of waste lands through flood protection, drainage and irrigation works. (See *People* v. *Sacramento Drainage Dist.*, 155 Cal. 373, 379-381 [103 P. 207].) In many circumstances, such as undoubtedly existed in Palo Verde Valley in 1923, the lands to be reclaimed are virtually uninhabited. The grant of election franchise to land owners, 'resident and non-resident, corporate and individual, is necessary to 'further a compelling state interest.' Absent the voting qualification provided by the Act, it is doubtful that the District could have been formed or functioned. The activities of the District no doubt affect the economy of the area and to that extent District affairs may be of interest to all inhabitants irrespective of land ownership, but such general interest, standing alone, cannot be said to constitute, as a matter of law, a direct, primary and substantial interest entitling all inhabitants to vote. Such general economic interest is

indirect, not primary and substantial. (See *Atchison etc. Ry. Co.* v. *Kings County Water Dist.*, 47 Cal.2d 140, 144-145 [302 P.2d 1].)"

In *Salyer Land Co.* v. *Tulare Water District* (1973) 410 U.S. 719 [35 L.Ed.2d 659, 93 S.Ct. 1224], the court considered a challenge to the California Water Storage District Act (Wat. Code, §§ 41000, 41001). The Act provides that only landowners may vote in a water storage district election, and votes are apportioned according to the assessed value of land owned. The particular district consisted of 193,000 acres, with a resident population of 77 persons, including 18 children, most of whom worked for the 4 corporations which farmed 85 percent of the land. Several of the smaller landowners had only 1 vote, while the largest corporation had 37,825. The court held the Act was valid for the reasons, among others, that the one person, one vote rule announced in *Reynolds* v. *Sims* (1964) 377 U.S. 533 [12 L.Ed.2d 506, 84 S.Ct. 1362], is not applicable; there was no denial of equal protection in denying votes to nonlandowning residents since assessments against landowners were the sole means of meeting expenses of the district; apportionment of votes on the basis of assessed value of land places the benefits and burdens in proportion to such value. (See also *Associated Enterprises, Inc.* v. *Toltec District* (1973) 410 U.S. 743 [35 L.Ed.2d 675, 93 S.Ct. 1237], in which a Wyoming statute allowing weighted voting of landowners, dependent on acreage owned, was upheld.)

Appellants rely almost entirely on *Schindler* and *Salyer* to support their claim that the trial court erred in finding Water Code section 50704 violative of the equal protection clause of the Fourteenth Amendment. The respondent-contestant attempts unsuccessfully, in our opinion, to attack the applicability of these decisions to the instant case. It is true that the specific contention raised in the case at bench was not presented to the courts in *Schindler* and *Salyer*, but it cannot be seriously questioned that both decisions approved the general proposition that weighted voting by landowners on the ·basis of acreage owned is constitutionally permissible in special district elections where the district board does not exercise general governmental powers over residents, and where the voter qualification statutes are rationally based. To determine whether the statutes for California reclamation district elections are rationally based, a review of the statutory plan is required.

Water Code section 50704, already quoted, gives voting rights only to landowners or legal representatives in the district on the basis of the dollar valuation of their real estate holdings in the district, as determined

from the last equalized tax roll for each county in which the lands of the district are situated.

Water Code section 50160 reads: "For all purposes relating to signing petitions and bylaws and voting, the last equalized tax roll for each county wherein any district land is situated is sufficient evidence of ownership and of value of lands in the district." Section 50600 provides for the election of the first board of trustees consisting of three eligible persons; sections 50701 and 50702 require the board to cause a copy of the last equalized tax roll in each county in which district lands are situated to be prepared and certified, which certified roll shall be used by the election board in determining the number of votes each voter may cast; section 50753 permits cumulative voting; section 50755 permits any qualified voter to challenge any vote, which challenge is to be determined by the election board, which method was not employed by contestant herein.

It is noteworthy that Water Code section 50817 authorizes any interested person to contest a *special election*, i.e., one submitting to the landowners the question whether or not bonds or refunding bonds shall be issued. We have discovered no statutory authorization in the Water Code for contests of regular elections at which trustees are elected, other than section 50755 discussed above.

In the instant case the trial court did not find anything inherently irrational or unreasonable in the use of an equalized county tax roll as the basis for apportioning votes for the governing board of a land-directed special district, but found merely that there was a different and, in its opinion, a better basis for apportioning, namely the operation and maintenance assessment roll of the district. This roll was to be prepared as provided by Water Code sections 51230 through 51349 having to do with the levy of assessments covering the original costs (Wat. Code, §§ 51230-51260), additional expenses incurred prior to completion of the project (Wat. Code, §§ 51300-51302) and operation and maintenance costs incurred after the project is completed (Wat. Code, §§ 51320-51349). An alternative method for levying operation and maintenance assessments is also provided for in sections 51360-51365. To provide funds prior to completion of the reclamation project the board of supervisors of the principal county in which the district is located is required to appoint three assessment commissioners who "shall view and assess upon the district land the sum estimated to be the cost of the reclamation plan, and shall apportion the sum according to the benefits

that will accrue to each parcel by reason of the expenditures of the sums of money." (Wat. Code, § 51231.) As regards operation and maintenance costs after completion of the project the Water Code provides that the district's trustees may report to the board of supervisors that the original and any supplemental reclamation plan is completed (Wat. Code, § 51321) and petition the board of supervisors again to appoint assessment commissioners (Wat. Code, § 51322) who "shall view and fix upon the district land an assessment valuation per acre for each parcel which is in proportion to the benefits to be derived from the continuance in operation of the district reclamation works." (Wat. Code, § 51323.) An operation and maintenance assessment roll shall be prepared and used as the basis for levying assessments to raise funds for maintenance, repair and replacement costs required to carry out the original or any supplemental plan of the district. (Wat. Code, §§ 51324-51326.) Provision is made for any person aggrieved by the decision of the board of supervisors approving an operation and maintenance assessment roll to commence an action in the superior court of the principal county to have the assessment valuations corrected, modified or annulled. (Wat. Code, § 51333.)

The alternative method for levying operation and maintenance assessments, not used in the case at bench, is described in Water Code section 51360, in part, as follows: "On or before December 31st of any year, the board may by resolution elect to proceed under this article for the levy, collection and enforcement of operation and maintenance assessments, and thereafter until termination of such election the provisions of this article and no other shall apply. The board by resolution may at any time on or before December 31st of any year terminate its election to proceed under this article, and thereafter the provisions of this article shall no longer apply. The adoption of either resolution shall not, however, affect the basis for voting at a district election held in the succeeding year." It is further provided that when this procedure is followed the trustees shall furnish an estimate in writing of the amount needed for payment of costs and expenses by the district in lieu of levying an operation and·maintenance assessment as provided in section 51320 et seq. (Wat. Code, § 51360.5.)

Water Code section 51361 provides, in part: "The board of supervisors, upon receipt of the estimate from the board, shall levy a special tax on all taxable land and improvements thereon shown on the county tax roll as lying within the district, sufficient to raise the estimated sum, or if district lands are located in more than one county, sufficient to raise the

proportionate amount of the sum required." If the trustees so specify, the board of supervisors shall levy the special tax on taxable land only. (Wat. Code, § 51366.)

Water Code section 50704, heretofore quoted in part, contains the following proviso pertaining to the alternative method for levying assessments: ". . . provided, however, that when a district elects to have the board of supervisors levy a special tax on behalf of the district on all taxable land and improvements pursuant to Article 4 (commencing with Section 51360) of Chapter 2 of Part 7 of this division, then each owner of taxable land or land and improvements in the district, or his legal representative, may vote at any district election in person or by proxy, and may cast one vote for each dollar's worth of taxable land and improvements owned by him or his principal in the district, as determined from the last equalized tax roll of each county in which the lands of the district are situated."

It is clear that the Legislature was aware that the operation and maintenance assessment roll would be different from the equalized county tax roll and as part of an overall plan and design, chose the latter rather than the former as the basis for apportioning votes. It is our purpose to determine whether this choice is so unreasonable or irrational as to require a finding that Water Code section 50704 is unconstitutional.

The trial court found that at the general election for the office of trustee on November 6, 1973, the contestant and defendant Ernest Burroughs were opposing candidates. Votes were cast in the election on the basis of one vote for each dollar's worth of land in the district as shown by the assessment roll of property in Contra Costa County for the year 1973-1974. Valuation assessment commissioners prepared an operation and maintenance assessment roll for the district in 1968 and that roll was adopted for district assessment purposes by the Board of Supervisors of Contra Costa County and has been in use ever since. The assessment for each parcel was in proportion to the benefits derived from the operation of the district's reclamation works.

The contestant showed that the value of the land in the district as shown on the last equalized tax roll of the county was substantially higher than the value of the same parcel on the operation and maintenance assessment roll of the district. There was testimony, however, by a member of the valuation commission appointed to prepare the operation and maintenance assessment, that there was one

owner who paid on the basis of a higher assessment to the reclamation district than to the county. This witness explained to the court the fundamental difference between the two rolls as far as they reflect valuation for oil and gas leases. Assessment of the reclamation district is for benefit derived through the maintenance of levees. If land is flooded, a farmer cannot use the land, but one extracting mineral rights from land could still drill a well. The difference between what it would cost to drill over water and what it costs to drill on dry land is the measure of the benefit derived by the one holding drilling rights.

We are not here called upon to decide the validity of this method for determining the benefits derived by the respective landowners from the operation of the reclamation works. The trial court concluded that apportioning votes on the basis of land values as determined from the equalized tax roll is constitutionally impermissible, but vote apportion-ment based on land values appearing on the district operation and maintenance assessment roll is acceptable. That method was approved for use in the court-ordered new election.

The California Legislature has consistently determined that voting strength should be based on the assessed valuation of land within the district for the purpose of electing the governing bodies of irrigation, reclamation, flood control and other land-directed districts established for special purposes. As part of the legislative plans, construction and maintenance costs have frequently been assessed against landowners in the district in proportion to the benefits their land derives from the project. This formula was followed in the legislation creating the Palo Verde Irrigation District and Tulare Lake Water Storage District, discussed respectively in *Schindler* and *Salyer.* No denial of equal protection was found in either of those cases and we find none ·in the instant case.

■ "The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. Legislatures are presumed to have acted constitutionally . . . and their statutory classifications will be set aside only if no grounds can be conceived to justify them. [Citations.]" (*McDonald* v. *Board of Election* (1969) 394 U.S. 802, 809 [22 L.Ed.2d 739, 745, 89 S.Ct. 1404]; see also *Weber* v. *City Council* (1973) 9 Cal.3d 950, 961 [109 Cal.Rptr. 553, 513 P.2d 601].)

■ A law will be upheld despite some inequality "if any state of facts reasonably may be conceived to justify it." (*McGowan* v. *Maryland* (1961) 366 U.S. 420, 426 [6 L.Ed.2d 393, 399, 81 S.Ct. 1101].) "A legislative classification may satisfy the traditional equal protection test without being the most precise possible means of accomplishing its legislative purpose. Only a reasonable relationship to that purpose is required. (*Whittaker* v. *Superior Court* (1968) 68 Cal.2d 357, 370-371 [66 Cal.Rptr. 710, 438 P.2d 358].)" (*Weber* v. *City Council, supra,* 9 Cal.3d 950 at p. 965.)

■ There is a presumption in favor of a classification based on legislative experience, and such classification will not be rejected unless it is plainly arbitrary. (*Borden's Co.* v. *Baldwin* (1934) 293 U.S. 194 [79 L.Ed. 281, 55 S.Ct. 187]; *County of Los Angeles* v. *Hurlbut* (1941) 44 Cal.App.2d 88; [111 P.2d 963]; see 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 343, pp. 3638-3640.)

■ To ascertain whether the legislative plan embodied within Water Code section 50704 is arbitrary, and whether any conceivable reasons exist to support the Legislature's decision to base voting rights in accordance with the assessed valuation of the land within the district rather than upon the operation and maintenance assessment roll of the district, a comparison of the alternatives is required.

All property in this state is to be taxed in proportion to its value (Cal. Const., art. XIII, § 1), and shall be assessed at 25 percent of its full value (Rev. & Tax. Code, § 401), which is the amount it would bring "if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other . . . ." (Rev. & Tax. Code, § 110.) It must be assumed that the lands within Hotchkiss Tract Reclamation District 799 were assessed by the county assessor on the basis of their full market value, enhanced by benefits derived from the existence of the reclamation works. The burden of county taxes would thus be borne in equal proportion to benefits by each taxpayer owning land in the district.

One very practical and valid reason supporting the use of the equalized tax roll as the basis for voting rights has already been suggested in *Schindler* v. *Palo Verde Irrigation Dist., supra,* 1 Cal.App.3d 831 at page 839, where the court stated that, "Absent the voting qualification provided by the Act, it is doubtful that the District could have been formed or functioned." The Legislature may well have

determined that the landowners could be affected by policy decisions wholly unrelated to assessments. Since the evaluation and the determination of the value of benefits derived from reclamation is made by valuation commissioners and the board of supervisors, not the trustees, it would appear that the legislative decision was reasonable and rational and was necessary to further a compelling state interest.

We are persuaded that the equalized county assessment roll may be a better and more scientific method for determining the benefits attributable to a reclamation project than the method described by the witness in the instant case. In fact, the courts have had occasion to attempt to determine whether or not the mode of assessment in a reclamation district was in accordance with proper apportionment, or equality of burden or benefit. It was held that, in the absence of a palpable violation of private rights, this was for the legislative department to consider. (*Reclamation District* v. *Hagar* (1884) 66 Cal. 54 [4 P. 945].) It has also been held that the benefits from reclamation works should be measured by the degree of protection against floods. (*Hawley* v. *Reclamation Dist. No. 730* (1934) 220 Cal. 271 [30 P.2d 505].) In an attempt to establish a formula for determining benefits to land for assessment purposes it was held that commissioners of assessments in a reclamation district should determine the value of the land before and after the improvement, and the difference was the measure of benefits, although this was not the only method for ascertaining proportionate benefits. (*Riverdale etc. Dist. No. 805* v. *Shimmin* (1914) 24 Cal.App. 595 [141 P. 1070].) The measure of benefits described in the last cited case would be included, along with other factors, in the fair market price evaluations used as the basis for the assessed values shown on the equalized tax roll of the counties. As the court in *Riverdale* said at pages 600-601: "The only practicable and, it would seem, the only possible measure of the benefit to the land is found in its value. The land is benefited as its value is increased. If the land is increased in value to the extent of fifty dollars an acre it is, of course, benefited to that amount. The true method is to determine, then, the value of the land before and after the construction of the improvement and the difference is the measure of the benefit. And this value is either the intrinsic or the market value. But whether one or the other, the result is the same, since we have no way of determining the *intrinsic* except by applying the test of the *market* value." At a rehearing granted in the case the court modified the quoted language by stating at page 604, "it is not necessary to hold and we do not hold that said method is the *only* valid one that may be adopted to ascertain the proportionate benefits to the land." (Italics added.)

Having concluded that Water Code section 50704 does not violate the equal protection clause of the Fourteenth Amendment there is no need to discuss the other issues raised by appellants except that relating to contestant's purported cross-appeal.

■ Contestant's notice of appeal states that he appeals "from that portion of the judgment entered in the above Superior Court on June 11, 1974, which appears on page 3 of the Memorandum of Decision, lines 20 through 22 and which reads as follows: 'On the basis of appellate and federal authority, including decision[s] cited by counsel in their briefs, this Court holds that the "one-man one-man [*sic*] vote" principle is not applicable.' "

An appeal may not be taken from a memorandum of decision of the trial court. "An oral or written opinion by a trial judge, discussing and purporting to decide the issues in the manner of an appellate court opinion, is merely an informal statement of his views. It may be helpful in framing the judgment, or on appeal in interpreting ambiguous or uncertain portions of the judgment. But it is not itself the decision of the court or a judgment, and it cannot be used to challenge otherwise sufficient findings and conclusions of the court. (See *DeCou* v. *Howell* (1923) 190 C. 741, 751, 214 P. 444; *Diaz* v. *Shultz* (1947) 81 C.A.2d 328, 183 P.2d 717; *Lord* v. *Katz* (1942) 54 C.A.2d 363, 367, 128 P.2d 907; 46 Am.Jur.2d 316; 17 So. Cal. L. Rev. 107; . . ." (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 5, p. 3185; see also 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 230, 231, 232, pp. 4220-4222.)

In *DeCou* v. *Howell* (1923) 190 Cal. 741, 751 [214 P. 444], the court stated: "The deliberations of the court are conclusively merged in the judgment. The findings of fact and conclusions of law constitute the decision which is the final, deliberate expression of the court. To hold that oral or written opinions or expressions of judges of trial courts may be resorted to to overturn judgments would be to open the door to mischievous and vexatious practices." (See also *Taormino* v. *Denny* (1970) 1 Cal.3d 679, 684 [83 Cal.Rptr. 359, 463 P.2d 711].)

Contestant appears to contend that the equal protection clause was violated because nonlandowner residents are denied the right to vote in reclamation district elections. There was no evidence introduced from which we can conclude that there were any nonlandowner residents in the district.

In any event, the trial court made no findings of fact or conclusions of law on the issue so even if this court were to liberally construe contestant's notice of appeal, the conclusion is inescapable that the issue he attempts to raise was not properly before the trial court and is not properly before this court.

Contestant's brief raises another issue on appeal—namely, that persons who were not landowners as defined by sections 50006 and 50704 of the Water Code were allowed to and did vote at the election. In particular, he contends that the contested votes were attributable to leasehold interests in the land as opposed to the fee interest and that these votes should be deleted from the count.

Again, a liberal view of contestant's notice of appeal indicates an intention to appeal only from a part of a severable judgment and only the part appealed from is to be considered up for review. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 131, p. 4126.)

The judgment finding Water Code section 50704 violative of the equal protection clause of the Fourteenth Amendment of the United States Constitution is reversed. The contestant's purported appeal is dismissed. Costs to defendants-appellants.

Molinari, P. J., and Sims, J., concurred.